RIKER DANZIG SCHERER HYLAND & PERRETTI  LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Defendants, Drinker Biddle & Reath LLP and Antonio M. Pozos

| | |
|---|---|
| JNL MANAGEMENT, LLC and JONATHAN LASKO, | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY DOCKET NO. 2:18-CV-05221-ES-SCM |
| Plaintiffs, | |
| vs. | CIVIL ACTION |
| HACKENSACK UNIVERSITY MEDICAL CENTER, CARRIER CLINIC, INC., DRINKER BIDDLE & REATH LLP, AND ANTONIO M. POZOS | ANSWER TO THE COMPLAINT, SEPARATE DEFENSES |
| Defendants. | |

Defendants, Drinker Biddle & Reath LLP ("DBR") and Antonio M. Pozos (together, "the Drinker Defendants"), by and through their attorneys, Riker, Danzig, Scherer, Hyland & Perretti, LLP, and by way of an Answer to the Complaint filed by Plaintiffs, JNL Management, LLC ("JNL") and Jonathan Lasko (together, "Plaintiffs"), state as follows:

## NATURE OF ACTION

1.      The paragraphs entitled "Nature of Action" set forth legal argument and other conclusions to which no response is required.  To the extent that any allegations of fact contained in these paragraphs are directed to conduct by the Drinker

Defendants, they are denied, and the Drinker Defendants incorporate by reference their responses to the other allegations of the Complaint and Exhibits A through X attached hereto.

The Drinker Defendants further respond to the "Nature of Action" paragraphs as follows. Apparently frustrated with the termination of their proposed business venture with Hackensack University Medical Center ("HUMC") and Carrier Clinic, Inc. ("Carrier"), Plaintiffs have filed this frivolous lawsuit and asserted causes of action against Carrier's attorneys, the Drinker Defendants, who simply provided the legal advice requested by their client. The allegations that the Drinker Defendants defamed Plaintiffs and interfered with their business relationship are spurious and fabricated.

The following is an accurate summary of the most relevant facts. Upon information and belief, in June 2016, Plaintiffs and HUMC began negotiating a joint venture to build a residential substance abuse and rehabilitation center in Mahwah, New Jersey. In mid-2017, HUMC invited Carrier to join the project, and they had a common interest privilege with respect to the discussions and information they shared regarding the proposed venture. Carrier retained DBR as counsel to provide it legal advice and assist with due diligence in connection with the proposed joint venture. While negotiations were ongoing, HUMC hired a company named Marathon Strategies to investigate Lasko and JNL as part of its due diligence. This investigation resulted in a 201-page report dated January 2018 (the "Marathon Report"). See Ex. A. The Marathon Report lays out, in extensive detail, Lasko's personal and business ties to Philip Esformes ("Esformes"), an individual who is currently under indictment, in jail,

2

and awaiting trial for allegedly running a $1 billion health care fraud and money laundering scheme.  United States v. Philip Esformes, et al., Case No. 16-20549-RNS (S.D. Fla.) ("Esformes Criminal Case"), Ex. B.  The United States Department of Justice ("DOJ") has characterized the Esformes matter as "the largest single criminal health care fraud case ever brought against individuals by the Department of Justice …. " Ex. F.

The findings contained in the Marathon Report, which are based on court documents and other public records, reveal a plethora of information about Lasko, including among other things, that Lasko and Esformes have been friends since high school and that they have a number of shared business interests in the healthcare field. See Ex. A, at 10.  Moreover, the report references a detention hearing for Esformes that took place on August 4, 2016, during which a DOJ Trial Attorney stated on the record that one of Lasko's companies may be involved in Esformes' scheme.  See Ex. A, at 9, 15, 23, 168-169; see also, Ex. C.  Tellingly, Lasko himself attended the hearing in support of Esformes, his friend and business partner, and offered his home as security for Esformes' bond. See Ex. A, at 10; Ex. C; Ex. W.  The court ultimately denied Esformes' plea to post a bond and be released from jail pending trial.  See Ex. C.  But, perhaps even more pertinent to this matter, because Lasko was present at the hearing with counsel, he was fully aware of concerns raised in open court by the U.S. Department of Justice during that hearing, which were memorialized in the public record and which were incorporated into the Marathon Report.  See Ex. A, at 9, 15, 23, 168-169; see also Ex. C.

HUMC shared the Marathon Report with Carrier and DBR.  Carrier asked DBR to review the Marathon Report and comment on it.  Mr. Pozos, a former Trial Attorney with the DOJ, who had recently joined DBR, was tasked with reviewing the Marathon Report and advising Carrier and HUMC on its contents.  As requested by the client, Mr. Pozos examined the report and documents referenced therein, as well as other documents that he retrieved from publicly accessible sources, such as transcripts and pleadings, and provided advice to Carrier and HUMC explaining these documents. Mr. Pozos did not solicit, review, or discuss any confidential information, nor is Mr. Pozos aware of any confidential information concerning Mr. Lasko or his businesses. Mr. Pozos did not participate in the investigation that led to the indictment of Mr. Esformes, or the ensuing prosecution of Mr. Esformes while at the DOJ, and Mr. Pozos never heard of Mr. Lasko and his businesses until tasked with this assignment.  Upon information and belief, sometime after Mr. Pozos reported back to HUMC and Carrier, HUMC made the business decision to exercise its express right to terminate negotiations and abandon the prospective joint venture with Plaintiffs.  HUMC did not consult with the Drinker Defendants before terminating negotiations with Plaintiffs.

### The Parties

2.	The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

3.	The Drinker Defendants admit only that Jonathan Lasko is a member of JNL and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

4.	Admitted.

4

5.      Admitted.

6.      Admitted.

7.      Admitted.

**Jurisdiction and Venue**

8.      This paragraph contains legal argument or other conclusions to which no response is required.  To the extent that this paragraph is deemed to assert factual allegations against the Drinker Defendants to which a response is required, the Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

9.      This paragraph contains legal argument or other conclusions to which no response is required.  To the extent that this paragraph is deemed to assert factual allegations against the Drinker Defendants to which a response is required, the Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

**Allegations Relevant to Claims for Relief**

10.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

11.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

12.     The Drinker Defendants admit only that HUMC is a non-profit, research and teaching hospital that provides tertiary and healthcare services and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

13.     The Drinker Defendants admit only that Carrier is a non-profit behavioral healthcare system that specializes in psychiatric and addiction treatment and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.   In response to footnote 1 to Paragraph 13, the Drinker Defendants admit only the existence of a recent announcement regarding a partnership between HUMC and Carrier, the terms of which speak for themselves.   To the extent that the allegations of Footnote 1 vary from the contents of the announcement, they are denied.

14.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

15.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

16.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

17.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

18.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

19.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

20.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

21.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

22.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

23.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

24.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

25.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

26.     The Drinker Defendants admit only the existence of the certain Letter of Intent ("LOI") referred to in this paragraph, the terms of which speak for themselves, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

27.     The Drinker Defendants admit only the existence of the LOI, the terms of which speak for themselves.   To the extent that the allegations of this paragraph vary from those terms, they are denied.

28.     The Drinker Defendants admit only the existence of the LOI, the terms of which speak for themselves.   To the extent that the allegations of this paragraph vary from those terms, they are denied.

29.     The Drinker Defendants admit only the existence of the LOI, the terms of which speak for themselves.   To the extent that the allegations of this paragraph vary from those terms, they are denied.   The Drinker Defendants are without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

30.     The Drinker Defendants admit only the existence of the LOI, the terms of which speak for themselves.   To the extent that the allegations of this paragraph vary from those terms, they are denied.

31.     The Drinker Defendants admit only the existence of the LOI, the terms of which speak for themselves.   To the extent that the allegations of this paragraph vary from those terms, they are denied.

32.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

33.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

34.     The Drinker Defendants admit only that HUMC, Carrier, and Plaintiffs had certain discussions with respect to the potential project after December 31, 2017, and that in late 2017 and early 2018, they negotiated and exchanged various drafts of a lease for the property, which was never finalized or executed.   The Drinker Defendants deny that the LOI did not terminate on December 31, 2017 and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

35.     The Drinker Defendants deny the allegations contained in this paragraph, and in response to footnote 2 to this paragraph, admit only the existence of certain drafts of a lease, which was never finalized or executed, the terms of which speak for themselves.

36.     The Drinker Defendants admit only that in early 2018 Plaintiffs informed HUMC and Carrier that Lasko had arranged financing to acquire the property and that he needed an executed lease to obtain the financing.  The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

37.     The Drinker Defendants admit only the existence of certain drafts of a lease, which was never finalized or executed, the terms of which speak for themselves.

38.     The Drinker Defendants admit only that Mr. Pozos joined DBR in January 2018, after previously being employed as a Trial Attorney at the DOJ.  The Drinker Defendants also further admit only that Esformes has been criminally charged for alleged Medicare fraud, among other alleged crimes, and is currently in jail awaiting trial.  The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations about what HUMC representatives said to counsel for JNL on February 16, 2018.  The Drinker Defendants further deny that the Drinker Defendants made the bulleted statements set forth in paragraph 38, but admit only that on February 14, 2018, Mr. Pozos advised HUMC and Carrier representatives regarding information contained in the Marathon Report, and other publicly available information.

The Drinker Defendants further aver that substantial public information is available regarding the subject matter of the purported statements attributed to the Drinker Defendants, including but not limited to information contained in the Marathon Report, and publicly available information about Mr. Lasko and JNL.

The Drinker Defendants deny that Mr. Pozos made the specific statement "Mr. Lasko is a 'person of interest' in connection with the prosecution of Philip Esformes and the Department of Justice 'is not done with' Mr. Lasko."  The Drinker Defendants, however, aver that there is substantial public information that the DOJ was aware of and interested in Mr. Lasko, including but not limited to information collected in the Marathon Report and other public documents, including a transcript from Esformes' August 4, 2016 detention hearing.  <u>See</u> Ex. C.  Relevant passages of the Marathon Report include, but are not limited to, the following:

> The Garden Wellness Center (TGWC), one of Lasko's three Florida detox facilities, is referenced in court filings as a potential participant in a kickback scheme involving indicted healthcare executive Phil Esformes, a co-owner of the TGWC and Lasko's longtime friend and occasional business partner. (Esformes was charged in 2016 for allegedly orchestrating the largest Medicare fraud scheme in US history – see below.)

> Esformes allegedly required two men to make payments to his son's private basketball coach in exchange for patient referrals. Court records show that TGWC also made payments to the same coach, and Department of Justice trial attorney Elizabeth Young noted that "it seems like the Garden Wellness Center might have the same scheme."

Ex. A, at 9, 23.

Relevant passages of the detention hearing transcript include, but are not limited to, the following statements made in open court by DOJ Trial Attorney Elizabeth Young:

> "Mr. Esformes and Mr. Lasko own a detoxification company called the Garden Wellness Center…"

> "Mr. Esformes and Mr. Lasko are partners in this business…"

> "Both Mr. Lasko and Mr. Esformes make a lot of money from Garden Wellness Center, tens of thousands of dollars a month."

> "In addition, the Garden Wellness Center pays Basketball Coach 1, who is named in the indictment, as someone who Gabriel and Guillermo Delgado were required to pay as a kickback to coach Mr. Esformes' son in basketball. So, it seems like Garden Wellness Center might have the same scheme."

Ex. C, at 14:6-15:17.

The Drinker Defendants further aver that the significance of the DOJ's concerns about Esformes requiring payments to a basketball coach in exchange for patient referrals is also a matter of public record, as explained by the following publications and public sources, among others:

> Govt.'s Mot. For Pre-Trial Detention and Supporting Mem. (July 22, 2016):  "Defendant and his co-conspirators used elaborate means to hide their illicit transactions, disguising kickbacks as (among other things) payments to escorts, charitable donations, and a basketball coach to provide private instruction to Defendant's son." Ex. D, at 1.

> The Wall Street Journal (July 22, 2016):  "As part of the plan, Mr. Esformes also received bribes and kickbacks from other health providers to refer patients to them, prosecutors said.  These bribes were disguised as payments to unnamed escorts flown into Orlando and transported to a hotel by limousine, payments to a basketball coach for Mr. Esformes's son and as charitable donations, the court documents allege." Ex. G.

> CNBC (July 22, 2016):  "Payments to escorts and a basketball coach to provide private lessons to Esformes' son also were used to disguise the illicit transactions, authorities said." Ex. H.

> Law360 (July 22, 2016):  "The DOJ is alleging an array of misconduct.  It includes paying kickbacks to attract patient referrals and receiving kickbacks in exchange for steering patients to other health care providers.  The kickbacks were sometimes disguised as charitable donations, payments to female escorts and payments to a basketball coach for Esformes' son, according to an indictment." Ex. I.

> People.com (Sept. 8, 2016): "He's [Esformes] been accused of running the largest Medicare fraud in U.S. history, allegedly using ill-gotten funds for private jets, escort services and to hire a pricey

basketball coach for his 16-year-old son, according to court records obtained by PEOPLE."  Ex. J.

The Drinker Defendants further deny that Mr. Pozos made the specific statement, "Mr. Lasko is being investigated for possibly referring patients to facilities in which Mr. Esformes had or has an interest."  The Drinker Defendants, however, aver that there is substantial public information that the DOJ through Trial Attorney Elizabeth Young expressed the concerns, as reflected in the Marathon Report and the August 4, 2016 detention hearing transcript described above, that Garden Wellness Center, Lasko's and Esformes' jointly owned company, may have paid kickbacks to Mr. Esformes in the form of payments to the basketball coach referenced above in exchange for patient referrals.  See Ex. A., at 9, 23; Ex. C., at 15:7-11.

The Drinker Defendants further deny that Mr. Pozos made the specific statement, "Mr. Lasko had, or has, a business relationship with a 'Mr. Delgado,' a person involved in the Esformes matter".  The Drinker Defendants, however, aver that there is substantial public information that DOJ Trial Attorney Elizabeth Young expressed the concerns, as reflected in the Marathon Report and the August 4, 2016 detention hearing transcript described above, that Garden Wellness Center, Lasko's and Esformes' jointly owned company, like Gabriel and Guillermo Delgado, may have paid kickbacks to Mr. Esformes in the form of payments to the basketball coach referenced above in exchange for patient referrals.  See Ex. A., at 9, 23; Ex. C., at 15:7-11.

The Drinker Defendants further deny that Mr. Pozos made the specific statement that "Mr. Esformes maintains a financial interest in JNL."  The Drinker Defendants, however, aver that there is substantial public information, including information from the Marathon Report and other public documents, that identifies a number of companies in Florida and California

which Lasko owns with Esformes' family members, and that on January 4, 2018, the DOJ filed a

notice of intent to introduce evidence in the Esformes trial, pursuant to Fed. R. Evid. 404(b),

that:

> "Defendant [Esformes] concealed his interest in private pay detoxification centers in Florida and California by putting the companies in the name of his children and funding the companies through bank accounts in the name of his wife and certain shell companies."

Ex. K, ¶ 4.

> According to the Marathon Report:

> "According to court filings in both the criminal case and a related civil case, Lasko has been friends with Esformes since high school and co-owns The Garden Wellness Center (TGWC) with him. Two of Lasko's other treatment centers – The Serenity Recovery Center at North Shore Medical Center in Miami, Florida and Serenity Recovery Center at Encino Hospital Medical Center in Encino, CA – partially controlled by members of Esformes' family, including his children and uncle."

Ex. A, at 10, 15-16, 24-25; 53, 88, 90, 95, 107, 109, 125, 128, 130, 132, 133, 143, 145, 147; see

also Ex. X.

The Drinker Defendants further aver that there is substantial public

information, including information from the Marathon Report and other public

documents, regarding the connections between JNL and Esformes' purported in-house

lawyer, Norman Ginsparg, whom the government had identified as a "co-conspirator" of

Esformes, and an Esformes employee, Jacob Bengio, who assisted Ginsparg. See Ex. L,

at 20, 45. Relevant portions of the Marathon Report include, but are not limited to, the

following:

> "Lasko has formed dozens of companies with attorney Norman Ginsparg and legal assistant Jacob Bengio, including the LLCs that operate his addiction treatment facilities. Ginsparg and Bengio

worked with Esformes at his various skilled-nursing and assisted living facilities."

"[T]he government contends that Ginsparg was actually a business associate of Esformes' who was involved in the alleged scheme and that Ginsparg could not have been representing Esformes because he was not licensed to practice in Florida." (Quoting Law360, Oct. 16, 2017.)

Ex. A., at 25, 201; *see also* listing of companies at 53, 60, 69, 87, 90, 92, 94 (JNL Management LLC), 95, 97, 99, 100, 107, 109, 111, 112, 125, 128, 130, 132, 133, 138, 143, 145, 147, 161.  Relevant public statements by the government include but are not limited to the following:

"Mr. Norman Ginsparg was a co-conspirator with Philip Esformes … he was involved in part of the fraud scheme with Philip Esformes regarding the inflation of lease agreements, payments for kickbacks and also created sham contracts for medical directors as a form of kickback payments."   Ex. L, at 20 (Testimony of Agent Ricardo Carcas).

"[T]he first I heard about Mr. Ginsparg was from a bill of particulars … filed in the Delgado brothers matter … identifying Mr. Ginsparg as a co-conspirator." Ex. M, at 113 (Testimony of DOJ Trial Attorney Elizabeth Young).

"[C]ertain cooperating witnesses had identified or referred to Mr. Ginsparg as Mr. Esformes's attorney.  However, I knew at the time of the search that Mr. Ginsparg was not licensed in Florida, and that, therefore, he could not be Mr. Esformes' attorney in this state." Ex. M, at 113 (Testimony of DOJ Trial Attorney Elizabeth Young).

"Q.     Jacob Bengio identified himself as someone working at Eden Gardens, right?
A.     Yes.
….
Q.     Jacob Bengio identified himself as the Assistant to Norman Ginsparg, who is the Director of Legal Affairs, right?
A.     Yes, he said that he was the Administrative Assistant." See Ex. L, at 45 (Testimony of Agent Ricardo Carcas).

> "My view of Mr. Bengio was that he was a bookkeeper for Mr. Esformes.  I knew him to be on a number of shell companies that were used as part of this money laundering kickback scheme.  If you put some of these entities on a publically available website with the Florida Department of Corporations, Mr. Bengio's name appears very frequently on corporate documents." Ex. Z, at 180 (Testimony of DOJ Trial Attorney Elizabeth Young).

The Drinker Defendants further aver that Ginsparg and Bengio's involvement in the Esformes scheme has been heavily covered as part of a controversy over the search of an Esformes assisted living facility known as Eden Gardens, including, but not limited to, the following articles:

> "Among the alleged violations claimed in the motion to disqualify is … a July 22, 2016, search of the Eden Gardens assisted-living facility, which the defense claims prosecutors knew housed the office of Esformes' civil counsel, Norman J. Ginsparg."  Ex. N, at 2.

> "At a hearing, Clint Warren, the FBI agent who led the team that searched Eden Gardens Assisted Living Facility in Miami on July 22, 2016, said that he had instructed agents to place any documents with law firm letterhead and those marked privileged or confidential in a 'taint box' that would be reviewed post search to determine if the materials were privileged … [Esformes' attorney] also pointed to various documents from Norman Ginsparg, an attorney licensed in Illinois who [the attorney] claims represented Esformes.  Warren testified that he had been told by the agents working on the case – who did not participate in the search so as to avoid tainting any evidence – that Ginsparg was a business associate of Esformes who was involved in the alleged scheme.  Prosecutors maintain that Ginsparg cannot be considered Esformes' lawyer because he has not represented Esformes in Florida or Illinois in litigation in those states and that he is listed as the CEO or manager of Esformes' businesses on corporate records."  Ex. O.

> "[HHS-OIG Special Agent Ricardo] Carcas said he knew that Ginsparg was an attorney but said that he was aware that he was licensed only in Illinois and was considered a co-conspirator.

> 'I can tell you what work I knew he did,' Carcas said when asked if he knew Ginsparg did legal work for Esformes.  The agent said

that purported legal work included writing alleged sham contracts to further the fraud scheme."  Ex. P.

"[DOJ Trial Attorney Elizabeth] Young testified that she received an email on July 22, 2016 – the day that Esformes' Eden Gardens assisted-living facility was being searched by the FBI – from … an attorney at Carlton Fields, saying that Ginsparg was an attorney for both Esformes and his companies and that the defense would not be waiving any privilege.

But Young said Ginsparg could not have been giving legal advice to Esformes' Florida companies because he is licensed to practice only in Illinois, not Florida…"  Ex. Q.

"Esformes claims Ginsparg acted as his personal attorney and as counsel for the companies so communications with him are privileged.  But the government says Ginsparg could not have provided legal advice in Florida as he is only licensed in Illinois. Prosecutors are also investigating Ginsparg as a potential co-conspirator and have raised the possibility of the crime-fraud exception to the attorney-client privilege applying in this case." Ex. R.

The Drinker Defendants further aver that JNL's Articles of Organization reflect a corporate address, 12221 West Dixie Hwy, North Miami, FL US 33161, at Esformes' Eden Gardens facility.  <u>Compare</u> Ex. S. <u>with</u> Ex. Y.  JNL's Articles of Organization further identify Ginsparg as a manager of JNL, and Bengio as JNL's registered agent.  <u>See</u> Ex. S.  JNL's 2016 Annual Report also lists Ginsparg as a manager of JNL, and Bengio as JNL's registered agent, and further lists both of their addresses as the address of Eden Gardens.  <u>See</u> Ex T.  The DOJ has identified Eden Gardens as "the command center for the extensive criminal enterprise directed by [Esformes]."  <u>See</u> Ex. U, at 11.

Further, the Drinker Defendants aver that the DOJ has publicly raised additional concerns regarding Lasko's relationship with Esformes, including concerns regarding Mahair Investments, LLC.  As set forth in the Marathon Report:

> Lasko and Esformes, along with attorney Norman Ginsparg, are also co-managers of Mahair Investments LLC, which was reportedly formed to invest money in 'high-end, exotic cars, including a Ferrari Aperta. (Mahair Investments is named in the DOJ's case against Esformes because the company owned a 2011 Ferrari that Esformes leased…)

Ex. A, at 10, 15, 25.

The Marathon Report further identified the registered address of Mahair Investments LLC as 12221 West Dixie Highway, North Miami, FL 33161, the same address registered to JNL.  Ex. A, at 112; see also Ex. V.  Further, the DOJ has made public statements regarding Mahair Investments, including but not limited to the following:

> "Eden Gardens was the mailing address Defendant [Esformes] provided to Medicare and Medicaid for several of Defendant's fraudulent health care facilities, as well as the address listed for a number of shell companies used to launder money.   For example, Defendant created a shell company called 'Mahair Investments,' registered the 'company to the Eden Gardens address … and used the 'company' to launder fraudulently obtained Medicare proceeds by purchasing a $1.6 million Ferrari Aperta."

Ex. U, at 11-12.

39.    The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

40.    The Drinker Defendants admit only that as of February 16, 2018, HUMC and Carrier were aware of certain business dealings between Mr. Lasko and Mr. Esformes based upon findings in the Marathon Report.   See Ex. A.   The Drinker Defendants further admit only the existence of certain drafts of a lease, which was never finalized or executed, the terms of which speak for themselves.   To the extent that the allegations of this paragraph vary from the drafts of the lease exchanged by the parties, they are denied.   The Drinker Defendants are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

41.     The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

42.     The Drinker Defendants deny the allegations contained in this paragraph.

43.     The Drinker Defendants deny the allegations contained in this paragraph and in footnote 4 to this paragraph.   The Drinker Defendants further specifically deny the allegation that, "Upon information and belief, there is no publicly available information regarding such allegations." See Response to Para. 38.   Indeed, the Drinker Defendants note that – during Esformes' detention hearing on August 4, 2016, during which DOJ Trial Attorney Elzabeth Young raised the concerns regarding Lasko, Esformes, and the Garden Wellness Center set forth in the Drinker Defendants' response to Paragraph 38 – the public record reflects that "Mr. Lasko and his lawyer [were present] in court …"  Ex. C, at 9.[1]  The remaining allegations contained in this paragraph and footnote 4 contain legal argument or other conclusions to which no response is required.

44.     The Drinker Defendants admit only the existence of a letter dated February 20, 2018 from Cohen, Tauber, Spievack, & Wagner, P.C.("CTS&W") to Mark Sparta and James Blazar at HUMC and Donald Parker at Carrier, the terms of which speak for themselves.  To the extent that the allegations of this paragraph vary from the contents of the letter, they are denied.

---

[1] The public record further reflects that Lasko offered to post collateral in support of a bond for Esformes, which the Court denied, despite substantial evidence presented at the hearing that Lasko attended that Esformes urged Gabriel and Guillermo Delgado to flee and/or commit suicide.  See e.g. Ex. C, at 11-12.

45.     The Drinker Defendants admit only the existence of letters dated February 26, 2018 from Winne Banta Basralian & Kahn, P.C. ("WBB&K") on behalf of HUMC and from DBR on behalf of Carrier to CTS&W, the terms of which speak for themselves.  To the extent that the allegations of this paragraph vary from the contents of those letters, they are denied.

46.     The Drinker Defendants admit only the existence of a letter dated February 27, 2018 from CTS&W to WBB&K and DBR, the terms of which speak for themselves.  To the extent that the allegations of this paragraph vary from those terms, they are denied.

47.     The Drinker Defendants admit only the existence of a letter dated March 5, 2018 from CTS&W to WBB&K and DBR, the terms of which speak for themselves.  To the extent that the allegations of this paragraph vary from those terms, they are denied.  The Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

48.     The Drinker Defendants deny the allegations contained in this paragraph.

49.     This paragraph contains legal argument or other conclusions to which no response is required.  To the extent that this paragraph is deemed to assert factual allegations against the Drinker Defendants to which a response is required, the allegations are denied.

50.     This paragraph contains legal argument or other conclusions to which no response is required.  To the extent that this paragraph is deemed to assert

factual allegations against the Drinker Defendants to which a response is required, the allegations are denied.

### First Claim for Relief: Breach of the Implied Covenant of Good Faith and Fair Dealing (Against HUMC and Carrier)

51.    The Drinker Defendants repeat their responses to the foregoing paragraphs as if set forth at length herein.

52-56. These paragraphs are not directed to the Drinker Defendants and, as such, no response from the Drinker Defendants is required.  To the extent that any factual allegations contained in these paragraphs are directed to the Drinker Defendants, the allegations are denied.

### Second Claim for Relief: Defamation (Against DBR and Pozos)

57.    The Drinker Defendants repeat their responses to the foregoing paragraphs as if set forth at length herein.

58.    The Drinker Defendants deny the allegations contained in this paragraph.

59.    This paragraph contains legal argument or other conclusions to which no response is required.  To the extent that this paragraph is deemed to assert factual allegations to which a response is required, the Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

60.    The Drinker Defendants deny the allegations contained in this paragraph.

61.    The Drinker Defendants deny the allegations contained in this paragraph.

**Third Claim for Relief: False Light (Against DBR and Pozos)**

62.     The Drinker Defendants repeat their responses to the foregoing paragraphs as if set forth at length herein.

63.     The Drinker Defendants deny the allegations contained in this paragraph.

64.     The Drinker Defendants deny the allegations contained in this paragraph.

65.     This paragraph contains legal argument or other conclusions to which no response is required.  To the extent that this paragraph is deemed to assert factual allegations to which a response is required, the Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

66.     The Drinker Defendants deny the allegations contained in this paragraph.

67.     The Drinker Defendants deny the allegations contained in this paragraph.

**Fourth Claim for Relief: Tortious Interference with Prospective Business Relations (Against DBR and Pozos)**

68.     The Drinker Defendants repeat their responses to the foregoing paragraphs as if set forth at length herein.

69.     This paragraph contains legal argument or other conclusions to which no response is required.  To the extent that this paragraph is deemed to assert factual allegations to which a response is required, the allegations are denied.

70.    The Drinker Defendants deny the allegations contained in this paragraph.

71.    This paragraph contains legal argument or other conclusions to which no response is required.  To the extent that this paragraph is deemed to assert factual allegations to which a response is required, the Drinker Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

72.    The Drinker Defendants deny the allegations contained in this paragraph.

73.    The Drinker Defendants deny the allegations contained in this paragraph.

74.    The Drinker Defendants deny the allegations contained in this paragraph.

**WHEREFORE**, the Drinker Defendants demand judgment and request that the Court (i) dismiss the Complaint with prejudice as against the Drinker Defendants; (ii) award the Drinker Defendants attorney's fees and costs of suit; and (iii) grant the Drinker Defendants such other relief as the Court shall deem equitable and just.

**RIKER, DANZIG, SCHERER, HYLAND & PERRETTI  LLP**
Attorneys for Defendants,
Drinker Biddle & Reath LLP and
Antonio M. Pozos

Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
lkalik@riker.com

By: _____s/Lance J. Kalik_____

Dated:                                    Lance J. Kalik

## SEPARATE DEFENSES

Having answered the allegations in the Complaint and having denied any liability whatsoever, the Drinker Defendants further deny any allegations that have not been expressly admitted and assert the following separate defenses:

### FIRST SEPARATE DEFENSE

The Complaint fails to state any claim upon which relief can be granted.

### SECOND SEPARATE DEFENSE

Each of Plaintiffs' claims must be dismissed because they fail to satisfy Fed. R. Civ. P. 8 and 9.

### THIRD SEPARATE DEFENSE

Each of Plaintiffs' claims must be dismissed because the alleged statements are protected by the First Amendment to the United States Constitution.

### FOURTH SEPARATE DEFENSE

Each of Plaintiffs' claims must be dismissed because any statements made by the Drinker Defendants are true or substantially true.

### FIFTH SEPARATE DEFENSE

Plaintiffs' defamation and false light claims must be dismissed because they are based upon statements that are protected by an absolute or qualified privilege, including the privileges for the protection of the publisher's own interest, the interest of the recipient or other third-person, an interest common to the publisher and the

recipient, and the fair reporting privilege.

### SIXTH SEPARATE DEFENSE

Plaintiffs' defamation and false light claims must be dismissed because they are based upon statements that are not defamatory.

### SEVENTH SEPARATE DEFENSE

Plaintiffs' defamation and false light claims must be dismissed because the alleged statements were not made with malice, knowledge of their falsity or with reckless disregard of their truth or falsity.

### EIGHTH SEPARATE DEFENSE

Plaintiffs' defamation and false light claims must be dismissed because the alleged statements were not published.

### NINTH SEPARATE DEFENSE

Plaintiffs' defamation claim must be dismissed because the Drinker Defendants were not negligent in making the alleged statements.

### TENTH SEPARATE DEFENSE

Plaintiffs' defamation claim must be dismissed because Plaintiffs cannot prove special damages.

### ELEVENTH SEPARATE DEFENSE

Plaintiffs' false light claim must be dismissed because the alleged statements would not be highly offensive to a reasonable person.

### TWELFTH SEPARATE DEFENSE

Plaintiffs' false light claim must be dismissed because the alleged statements were not publicized.

## THIRTEENTH SEPARATE DEFENSE

Plaintiffs' tortious interference claim must be dismissed because the Drinker Defendants were acting as agents for their client when making the alleged defamatory statements.

## FOURTEENTH SEPARATE DEFENSE

Plaintiffs' tortious interference claim must be dismissed because Plaintiffs had no reasonable expectation of prospective economic advantage.

## FIFTEENTH SEPARATE DEFENSE

Plaintiffs' tortious interference claim must be dismissed because the Drinker Defendants did not act with malice or without justification.

## SIXTEENTH SEPARATE DEFENSE

Plaintiffs' tortious interference claim must be dismissed because Plaintiffs cannot prove damages.

## SEVENTEENTH SEPARATE DEFENSE

Plaintiffs' tortious interference claim must be dismissed because it is based entirely on non-actionable alleged defamatory statements.

## EIGHTEENTH SEPARATE DEFENSE

The Drinker Defendants have not proximately caused a loss to Plaintiffs' business or reputation.

## NINETEENTH SEPARATE DEFENSE

Plaintiffs lack the contractual or statutory right to claim damages.

## TWENTIETH SEPARATE DEFENSE

At all times relevant to this matter, the Drinker Defendants complied with

all applicable laws, regulations, ethical rules and/or standards.

## TWENTY-FIRST SEPARATE DEFENSE

By their own acts and conduct, Plaintiffs' claims are barred by virtue of the doctrine of unclean hands, estoppel, waiver, and/or laches and they are otherwise precluded from bringing this action.

## TWENTY-SECOND SEPARATE DEFENSE

Without conceding that Plaintiffs have suffered any damages as a result of any alleged wrongdoing by the Drinker Defendants, Plaintiffs have failed to mitigate or minimize the alleged damages.

## TWENTY-THIRD SEPARATE DEFENSE

Plaintiffs cannot show that they are entitled to punitive damages.

## TWENTY-FOURTH SEPARATE DEFENSE

The Drinker Defendants deny every allegation, whether express or implied, that is not unequivocally and not specifically admitted herein.

## TWENTY-FIFTH SEPARATE DEFENSE

The Complaint does not describe the claims made by Plaintiffs with sufficient particularity to enable the Drinker Defendants to determine what additional defenses they may have in response to the Complaint.  The Drinker Defendants reserve the right to assert additional affirmative defenses and defenses as may appear applicable during the course of this litigation.

**RIKER, DANZIG, SCHERER, HYLAND**
**& PERRETTI  LLP**
Attorneys for Defendants,
Drinker Biddle & Reath LLP and
Antonio M. Pozos

Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
lkalik@riker.com

By:         s/Lance J. Kalik
Dated: 5/8/2018                            Lance J. Kalik

## <u>CERTIFICATION PURSUANT TO L. Civ. R. 11.2</u>

To the best of my knowledge, information and belief, I certify that the matter in controversy is not the subject of any action pending in any court or of a pending arbitration proceeding in connection with the subject of the action.  I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**RIKER, DANZIG, SCHERER, HYLAND & PERRETTI  LLP**
Attorneys for Defendants,
Drinker Biddle & Reath LLP and
Antonio M. Pozos

Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
lkalik@riker.com

By:         s/Lance J. Kalik
Dated: 5/8/2018                            Lance J. Kalik