Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

JNL MANAGEMENT, LLC &
JONATHAN LASKO,

          Plaintiffs,

          v.

HACKENSACK UNIVERSITY MEDICAL
CENTER, et al.,

          Defendants.

Civil Action No. 18-5221 (ES) (SCM)

OPINION

SALAS, DISTRICT JUDGE

      Before the Court is Drinker Biddle & Reath LLP ("DBR") and Antonio M. Pozos's

(together "Drinker Defendants") motion for judgement on the pleadings pursuant to Federal Rule

of Civil Procedure 12(c). (D.E. No. 23). The Court has jurisdiction pursuant to 28 U.S.C. § 1332.[1]

The Court has considered the parties' submissions[2] and decides the matter without oral argument.

*See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons the Court GRANTS-IN-

PART and DENIES-IN-PART Drinker Defendants' motion.

## I.      Background

      JNL Management LLC ("JNL") is a Florida limited liability company whose manager is

Jonathan Lasko ("Lasko"). (Compl. ¶¶ 2 & 3). Lasko and JNL (together "Plaintiffs") initiated

---

[1]      On October 29, 2018, the Court ordered the parties to identify the citizenship of each member of DBR and
JNL Management, LLC ("JNL"). (D.E. No. 45). The parties provided this information, confirming that complete
diversity exists. (*See* D.E. Nos. 46 & 48).

[2]      (D.E. No. 1, Complaint ("Compl."); D.E. No. 17 ("Answer"); D.E. No. 23-1 ("Defs. Mov. Br."); D.E. No.
34 ("Pls. Opp. Br."); D.E. No. 36 ("Defs. Reply")).

this action on April 3, 2018. (*See* Compl.). In relevant part, the Complaint alleges that in early 2016 JNL was engaged in discussions to purchase property located in Mahwah, New Jersey, for use as a behavioral health, residential substance abuse, detoxification and rehabilitation center (the "Facility"). (Compl. ¶ 11). JNL eventually entered into a contract of sale for the property. (*Id.*).

Around May 2016, JNL began discussions with Hackensack University Medical Center ("HUMC"), a non-profit, research, and teaching hospital that provides tertiary and healthcare needs, regarding a joint venture for the Facility. (*Id.* ¶¶ 12 & 14). Over the next few months JNL and HUMC engaged in negotiations about the joint venture. (*See id.* ¶ 16). During this period HUMC conducted due diligence, which included interviewing and interacting with JNL's staff, reviewing financial models, environmental and site reports, and conducting site visits and inspections. (*Id.* ¶¶ 15 & 16).

Sometime later, HUMC advised JNL that it was exploring a relationship with Carrier Clinic, Inc. ("Carrier"), a not-for-profit behavioral healthcare system that specializes in psychiatric and addiction treatment, and that any joint venture for the Facility would include Carrier. (*See id.* ¶¶ 13 & 25). The discussions between JNL and HUMC/Carrier eventually led to the parties executing a Letter of Intent, effective "as of July 1, 2017" (the "LOI"). (*Id.* ¶ 26). The LOI contemplated an arrangement whereby JNL would create a separate entity to purchase the Mahwah property, which would then lease it to a management entity that HUMC and Carrier would create to run the Facility. (*See id.* ¶¶ 28 & 29).

In late-January 2018, HUMC and Carrier had discussions with JNL regarding Lasko's "unrelated business dealings" with Philip Esformes ("Esformes"). (*Id.* ¶ 40). Esformes is "the owner of skilled nursing and assisted facilities who is awaiting trial for alleged Medicare fraud." (*See id.* ¶ 38 n.3). Based on these discussions, HUMC and Carrier requested that a provision be

inserted into the lease for the Facility. (*Id.* ¶ 40). This provision would permit HUMC and Carrier to acquire ownership of the property in the event that Lasko (or any entity he is affiliated with) was prohibited from participating in federal programs, including Medicare. (*Id.*). Plaintiffs accepted this request. (*Id.* ¶ 41).

On February 16, 2018, JNL's counsel was informed by Mark Sparta, Executive Vice President and Chief Operating Officer of HUMC, and Audrey Murphy, Executive Vice President and General Counsel of HUMC, that HUMC and Carrier were not going to proceed with the joint venture. (*Id.* ¶ 38). Specifically, Sparta and Murphy stated that HUMC and Carrier were informed by Drinker Defendants, who represented Carrier during these negotiations, that:

- Mr. Lasko is a "person of interest" in connection with the prosecution of Philip Esformes and the Department of Justice "is not done with" Mr. Lasko;
- Mr. Esformes maintains a financial interest in JNL;
- Mr. Lasko had, or has, a business relationship with a "Mr. Delgado," a person involved in the Esformes matter; and
- Mr. Lasko is being investigated for possibly referring patients to facilities in which Mr. Esformes had or has an interest.

(*See id.*). Plaintiff contends that these statements "were false, inaccurate, and/or misleading." (*Id.* ¶ 43).

In a follow-up call, Sparta and Jim Blazar, Executive Vice President and Chief Strategy Officer of HUMC, confirmed to Lasko that Drinker Defendants had made these statements. (*Id.* ¶ 39). Sparta told Lasko that he was "disappointed" and that if not for this new information, "HUMC was ready to execute the lease and proceed to immediately consummate the joint venture contemplated by the LOI." (*Id.*). Sparta also told Lasko that "an attorney from DBR who was formerly with the DOJ"—which the Complaint identifies as Pozos (*see id.* ¶ 38)—revealed this information during a call with HUMC and Carrier. (*Id.* ¶ 39). In their answer, the Drinker Defendants acknowledge that Pozos spoke with HUMC and Carrier representatives about Lasko,

but deny making the alleged statements. (*See* Answer ¶ 38).

Thereafter, JNL's counsel inquired of HUMC and Carrier as to whether they intended to proceed with the joint venture. (*Id.* ¶ 44). On February 26, 2018, HUMC and Carrier responded that they would not be proceeding with the joint venture. (*Id.* ¶ 45).

On April 3, 2018, Plaintiffs filed this action, asserting three claims against Drinker Defendants: Claim 2 - defamation, Claim 3 - false light, and Claim 4 - tortious interference with prospective business relations.[3] On May 8, 2018, Drinker Defendants filed an answer. (D.E. No. 17). Subsequently, the parties briefed the instant motion for judgment on the pleadings.

## II.    Legal Standard

A party may move for judgment on the pleadings after the pleadings are closed. *See* Fed. R. Civ. P. 12(c). When adjudicating a motion for judgment on the pleading that seeks dismissal for failure to state a clam, the court applies the same standard as under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(h)(2); *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

To state a claim a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Neither a claimant's "blanket assertion[s]" of a right to relief nor "threadbare recitals of a cause of action's elements, supported by mere

---

[3]    The Complaint also asserted a claim against Carrier and HUMC for breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 51–56). On January 14, 2018, Plaintiffs reached a settlement with Carrier and HUMC. (*See* D.E. No. 65).

conclusory statements" satisfy Rule 8(a)(2)'s requirements. *Twombly*, 550 U.S. at 556 n.3.

Rule 8(a)(2)'s pleading standard also requires that a complaint set forth the plaintiff's claims with enough specificity as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570. The complaint must contain "sufficient facts to put the proper defendants on notice so they can frame an answer" to the plaintiff's allegations. *Dist. Council 47, Am. Fed'n of State, Cty. & Mun. Emps., AFL–CIO by Cronin v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986).

In assessing a Rule 12(b)(6), or as here, a 12(c), motion, "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference drawn therefrom." *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But a reviewing court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678. Therefore, a court must first separate a complaint's facts from its legal conclusions and then assess whether those facts raise a plausible claim for relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211–12 (3d Cir. 2009).

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. Analysis

### A. Documents Properly Before the Court

Before proceeding, the Court finds it necessary to first clarify which documents it can properly consider in deciding the instant motion. Drinker Defendants' Answer attached 26 exhibits, upon which the Answer relies to raise several allegations. (*See* D.E. No. 17). These

documents include publicly available court documents from the Esformes criminal prosecution (*see* D.E. Nos. 17-3 – 17-6, 17-12 – 17-14, 17-22 & 17-24 – 17-27), a Department of Justice Press Release (D.E. No. 17-7), JNL's Articles of Organization (D.E. No. 17-20) and 2016 Annual Report (D.E. No. 17-21), multiple newspaper articles (*see* D.E. Nos. 17-8 – 17-11 & 17-15 – 17-19), and a report prepared on behalf of HUMC by a company named Marathon Strategies (the "Marathon Report") (D.E. No. 17-2). Defendants appear to contend that the Court can rely on all these documents because they are "publicly available information" and because these documents were attached to their Answer. (*See* Defs. Mov. Br. at 6 n.2). Drinker Defendants are only partially correct.

As explained above, where a Rule 12(c) motion asserts that the complaint fails to state a claim, as the instant motion does, the Court applies the same standard contemplated by a Rule 12(b)(6) motion. "[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion . . . ." 5C Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 1366 (3d ed.) (citing, inter alia, *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 559 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 905 (3d Cir. 1997; *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). "The general rule, of course, is that a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) (internal quotation marks omitted). But "[i]t is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record." *Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999).

The Third Circuit has defined matters of public records narrowly for the purposes of a

motion to dismiss, essentially requiring that the document be a publicly available *government* record. *See, e.g.*, *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1197 (3d Cir. 1993) (defining public records to include "criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies" (internal citations omitted)). The mere fact that a document is "public" or "publicly available" does not make it a "matter of public record." *See, e.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 249–50 (3d. Cir. 2014) (refusing to consider a company's press release); *Cole's Wexford Hotel, Inc. v. UPMC*, 127 F. Supp. 3d 387, 417 n.14 (W.D. Pa. 2015) (noting that "[n]ewspaper articles are publicly available, but they are not 'matters of public record' for purposes of consideration on a motion to dismiss") (citation omitted). For example, the *Schmidt* Court refused to consider press releases not attached to or reference by the complaint, despite the fact that they were public and available before the plaintiff filed the complaint, because these documents were not "records of a government agency." *See* 770 F.3d at 250.

Here, publicly available documents appearing on the docket of Esformes's criminal prosecution are clear examples of matters of public record. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1197; *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."); *Lavin v. New York News, Inc.*, 757 F.2d 1416, 1419 (3d Cir. 1985) (holding that certain affidavits and related documents filed in another proceeding became matters of public record). Similarly, articles of organization and similar documents that are filed with the relevant State government body are also matters of public record. *See Schmidt*, 770 F.3d at 249; *Overfield v. Pennroad Corp*., 146 F.2d 889, 897 (3d Cir. 1944) (noting that a company's charter and bylaws were matters of public

record).  Finally, the Department of Justice's Press Release is also a matter of public record because it is a record of a government agency.  *See Schmidt*, 770 F.3d at 250.  Thus, the Court can take judicial notice of these documents for purposes of deciding the instant motion.  But the Court may take judicial notice of these documents "not to prove the truth of their contents but only to determine what the documents stated."  *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

By contrast, the Court may not consider any of the newspaper articles or the Marathon Report.  Although public, newspapers are not "matters of public record" as defined by the Third Circuit.  *See UPMC*, 127 F. Supp. 3d at 417 n.14; *see also Pension Ben. Guar. Corp.*, 998 F.2d at 1197; *Schmidt*, 770 F.3d at 250.  Similarly, the Marathon Report, a private report prepared for the benefit of HUMC by a private company, is not a publicly available document, much less a matter of public record.  Although Drinker Defendants contend that this document was created with the use of publicly available information, the document summarizes this information and provides the drafter's observations and findings.  (*See* D.E. No. 17-2).  Thus, unlike a properly authenticated government record, it cannot be said that "no serious questions as to [its] authenticity can exist."  *See Oran*, 226 F.3d at 289 (quoting *Kramer*, 937 F.2d at 774).

Furthermore, the fact that Drinker Defendants attached all of these documents to their Answer, and that their Answer heavily relies on language from these documents, does not mean that the Court can now consider the documents for purposes of deciding this motion.  *See* 5C Wright, *et al.*, *supra* § 1368 ("According to Rule 7(a), the plaintiff is not required to reply to affirmative defenses or new matter appearing in the answer, and, under Rule 8(b)(6), averments in a pleading to which no responsive pleading is required are considered by the court to have been denied.").  Indeed, to permit such a result would render Rule 12(b)(6), and the requirement that

such motions be limited to the confines of the complaint, largely useless.

Rather, since the legal standard for deciding Rule 12(c) motions is identical to the one set for Rule 12(b)(6), when a defendant moves for judgment on the pleadings this Court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer*, 605 F.3d at 230. Here, Plaintiffs' Complaint does not attach or reference either the newspaper articles or the Marathon Report, and these documents are not integral to the Complaint since the asserted claims are not based upon these documents. (*See generally* Compl.). Consequently, in deciding this motion the Court will not consider the newspaper articles, the Marathon Report, or any arguments based on such documents.

**B.    Claim 2: Defamation**

New Jersey courts have identified three elements to assert a claim of defamation: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009); *Cruz v. HSBC*, No. 10-0135, 2010 WL 2989987, at *2 (D.N.J. July 26, 2010) ("[P]laintiff must show defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault."). The Court will examine each element below.

**i.    Elements of Defamation**

**1.    False and Defamatory Statement Concerning Plaintiff**

"A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *G.D. v. Kenny*, 15 A.3d 300, 310

(N.J. 2011) (citations omitted). Particularly, a "statement falsely attributing criminality to an individual is defamatory as a matter of law." *Id.* at 310; *Lawrence v. Bauer Pub. & Printing Ltd.*, 446 A.2d 469, 473 (N.J. 1982) (finding statement that plaintiff might be charged with criminal conduct is defamatory as a matter of law). However, "the mere allegation that [the] plaintiff knows a criminal is not defamatory as a matter of law." *Romaine v. Kallinger*, 537 A.2d 284, 289 (N.J. 1988) (holding that statement in a book that loosely linked plaintiffs with "a junkie they both knew who was doing time in prison," without any suggestion of direct or indirect involvement with the criminal, did not constitute defamation). But such a statement is defamatory if it indicates that the plaintiff participated in disreputable behavior. *See Soobzokov v. Lichtblau*, 664 Fed. App'x 163, 168 (3d Cir. 2016).

Drinker Defendants contend that the statements at issue were not defamatory because they "do not assert that Lasko himself is a criminal or even that he committed any criminal acts. Instead, the statements reflect that Lasko and his companies were *associated* with suspected criminals." (Defs. Reply at 12 (emphasis in original); *see also* Defs. Mov. Br. at 39).

This argument is a stretch, to say the least. The statements at issue here do more than merely allege that Lasko knows Esformes. As Drinker Defendants explain in excruciating detail in their Answer and brief, Esformes is "awaiting trial for allegedly running a $1 billion health care fraud and money laundering scheme" through the use of various entities. (Defs. Mov. Br. at 6). Esformes's "'lieutenants' Guillermo and Gabriel Delgado (collectively the 'Delgado Brothers'), also utilized various physicians, hospitals, and other health care providers who paid for access to thousands of Medicare and Medicaid beneficiaries under the defendants' control." (*Id.* at 8). Here, the alleged statements at issue state that Lasko "is a person of interest" in connection with that ongoing prosecution, that "Esformes maintains a financial interest in JNL," that "Lasko had, or

has, business relationship with Mr. Delgado," and that Lasko "is being investigated for possibly referring patients to facilities" connected with Esformes.  (*See* Compl. ¶ 38).

As a starting point, the first and fourth statements independently impute criminality to Lasko by suggesting that Lasko is not only a "person of interest" in connection with Esformes's crimes, but by suggesting that Lasko may have participated in the alleged criminal activity because he referred patients to facilities connected with Esformes.  *See G.D.*, 15 A.3d at 310; *Lawrence*, 446 A.2d at 473 (finding statement that plaintiff might be charged with criminal conduct is defamatory as a matter of law).  Moreover, taken together, these four statements at the very least create the impression that Lasko and JNL were indirectly connected with Esformes's criminal enterprise, because the statements suggest that Esformes has a financial interest in JNL, and that Lasko "had or has" a business relationship with one of Esformes's "lieutenants."  *See Soobzokov*, 664 Fed. App'x at 168 (noting that a statement is defamatory if it indicates that the plaintiff participated in disreputable behavior).  Such statements would undoubtably subject a person to not only contempt and ridicule, but would harm his reputation by deterring "others from wanting to associate or deal with him."  *See G.D.* 15 A.3d at 310.  Indeed, that is precisely what Plaintiffs allege in this case, since a HUMC representative stated that the HUMC and Carrier would have proceeded with the joint venture *but for* the statements in question.  (*See* Compl ¶ 39).

Drinker Defendants also argue that the statements are not defamatory because they are true. (Defs. Mov. Br. at 30–31).  Truth is a full defense to liability, even if the statements are defamatory. *See G.D.*, 15 A.3d at 310.  However, truthfulness is a question of fact not appropriately decided on a motion to dismiss.  *Cruz*, 2010 WL 2989987, at *2.

Here, Drinker Defendants' Answer and brief raise a litany of issues of material fact that cannot possibly be resolved at this early stage in the litigation.  Indeed, Drinker Defendants dispute

that they made these statements. (*See* Answer ¶ 38). In an attempt to salvage this argument, Drinker Defendants spend multiple pages of their brief discussing various documents from the Esformes criminal proceedings. (*See* Defs. Mov. Br. at 31–38). As Plaintiffs indicate, however, none of these documents directly support the truthfulness of the statements at issue. (*See* Pls. Opp. Br. 13–17). Rather, Drinker Defendants ask this Court to draw inferences in their favor. (*See, e.g.*, Defs. Mov. Br. at 33 (attempting to show the truthfulness of the statement that "Lasko is a person of interest" and that the government "is not done" with Lasko by discussing that Lasko and Esformes have an interest in unrelated business ventures, and that the Delgado brothers made certain alleged payments on behalf of Esformes to a third party from one of those businesses)). While a fact finder could find this evidence persuasive, at this stage in the litigation all reasonable inferences must be drawn in favor of Plaintiffs. *See Malleus*, 641 F.3d at 563. The Complaint contains allegations that Plaintiffs denied the veracity of these statements to HUMC and Carrier. (*See* Compl. ¶¶ 44). Together with the other allegations, the Court must draw the reasonable inference that the statements are false. As such, the Court declines Drinker Defendants' misguided invitation and finds that the statements meet the first element of defamation.

### 2.    Publication of That Statement To A Third Party

To satisfy the communication element of a defamation claim a plaintiff must plead facts that enable the defendant to identify the defamer and the circumstances of the publication. *See Printing Mart–Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 46 (N.J. 1989). Plaintiffs' Complaint meets this standard, because it sufficiently alleges the "when, where, by which defendants and by what words, written or oral, plaintiff was defamed." *See Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 62 (N.J. Super. Ct. App. Div. 1991). The Complaint alleges that the Drinker Defendants published the statements to multiple representatives of Carrier and HUMC during a

phone call sometime before February 16, 2018. (*See* Compl. ¶¶ 38 & 39). This is sufficient to allege publication to a third party. *See, e.g.*, *Cruz*, 2010 WL 2989987, at *3 (finding allegation that defendant made the false statements to "employees and management at defendant HSBC" was sufficient to allege publication).

Drinker Defendants contend that Plaintiffs have failed to allege that the statements were unprivileged. (Defs. Mov. Br. at 15; Defs. Reply at 2). They contend that unprivileged communication is an element of a defamation claim. (*See* Defs. Reply at 2). As a result, they argue that the common interest privilege and the litigation privilege protected these statements. (Defs. Mov. Br. at 17–29).

Drinker Defendants are incorrect. Although some New Jersey courts have included the words "unprivileged" as part of the second element of a defamation claim, *see, e.g.*, *G.D.*, 15 A.3d at 310, controlling New Jersey law continues to hold that privilege, such as the absolute litigation privilege, fair-report privilege, and the common interest qualified privilege, is an affirmative defense. *See, e.g.*, *Coleman v. Newark Morning Ledger Co.*, 149 A.2d 193, 203 (N.J. 1959) ("[T]he defendant has at the outset the burden of establishing the existence of a privileged occasion for the publication. . . ."); *Kenny v. Denbo*, No. A-2407-12T3, 2014 WL 1281450, at *4 (N.J. Super. Ct. App. Div. Apr. 1, 2014) (noting that privilege, like truth, is a defense to defamation); *Binkewitz v. Allstate Ins. Co.*, 537 A.2d 723, 730 (N.J. Super. Ct. App. Div. 1988) ("Just as in a defamation action, the qualified privilege is a defense which must be raised by defendant."); *Too Much Media, LLC v. Hale*, 993 A.2d 845, 853 (N.J. Super. App. Div. 2010), *aff'd and modified*, 20 A.3d 364 (2011) ("As with any assertion of privilege, the proponent bears the burden to prove its application to any given situation."); Restatement (Second) of Torts ch. 25 (grouping privileges to defamation within chapter on defenses).

As far as this Court can tell, none of the New Jersey Supreme Court cases that include the language "unprivileged" as part of the second element of defamation have specifically overturned *Coleman* and its progeny, and lower courts continue to treat privilege as a defense. Not surprisingly, then, virtually all courts that have discussed this issue have found that privilege is an affirmative defense, not an essential element of a defamation claim. *See, e.g.*, *Beverly Hills Motoring, Inc. v. Morici*, No. 14-0756, 2015 WL 248352, at *6 n.5 (D.N.J. Jan. 20, 2015) (declining to find statements were protected by qualified privilege because this "asserted defense" was not "apparent on the face of the complaint"); *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 209 (D.N.J. 2011) (noting that privilege is an affirmative defense to a defamation claim); *Cruz*, 2010 WL 2989987, at *4 (same); *see also Kenny*, 2014 WL 1281450, at *4 (noting that for purposes of a motion to dismiss the plaintiff had sufficiently alleged defamation when the facts suggested that the defendant had "negligently made false and defamatory statements about plaintiff to numerous individuals"); *O'Keefe v. WDC Media, LLC*, No. 13-6530, 2015 WL 1472410, at *5 (D.N.J. Mar. 30, 2015) (describing the fair report privilege as "an absolute *defense* to defamation") (citing *Salzano v. North Jersey Media Grp., Inc.*, 993 A.2d 778, 796–97 (N.J. 2010)) (emphasis added).

In their reply brief, Drinker Defendants contend that "[t]he Third Circuit has repeatedly upheld dismissals for failure to satisfy the 'unprivileged publication' requirement." (*See* Defs. Reply at 2 (citing *Torrey v. State Dep't of Law & Pub. Safety*, 717 Fed. App'x. 169, 171 (3d Cir. 2017); *Robles v. United States Envtl. Universal Servs., Inc.*, 469 Fed. App'x. 104, 109 (3d Cir. 2012); *Kersey v. Becton Dickinson & Co.*, 433 Fed. App'x. 105, 109–10 (3d Cir. 2011)). However, these cases were decided at the summary judgment stage, appear to apply privilege as a defense, and discuss how the plaintiffs failed to provide sufficient evidence to overcome it. *See Kersey*,

433 F. App'x at 110 (holding that the evidence showed that the communication was subject to the litigation privilege); *Robles*, 469 F. App'x at 109 (holding that the communication was subject to the qualified privileged and stating that the plaintiff had failed to provide any evidence of malicious motive); *Torrey*, 717 Fed. App'x. at 171 (noting that the evidence showed that the communication was disseminated only to parties that the plaintiff had authorized to receive it). As such, these cases do not support Drinker Defendants' argument that privilege is an element of the claim that need be pleaded for purposes of deciding a motion to dismiss.[4] Until the New Jersey Supreme Court clearly instructs otherwise, this Court is bound by *Coleman* and its progeny. *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted.").

Thus, the Court concludes that Plaintiffs have sufficiently pleaded the second element, and discusses the asserted privilege defenses below.

### 3. Fault

Where the person defamed is a private party and the statement involves a private matter, the fault element is met by showing that the person communicated the false statement "while acting negligently in failing to ascertain the truth or falsity of the statement before communicating it." *See Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996).

The Complaint alleges that the statements in question were "false, inaccurate, and/or misleading" and were made "in a reckless fashion." (*See* Comp. ¶¶ 43 & 58). Although this is a

---

[4]    To the extent that these opinions suggest privilege is an element that the plaintiff must plead, the Court respectfully notes that the opinions are not binding because they are unpublished. *See, e.g.*, *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006) (noting that unpublished opinions are not binding on district courts).

legal conclusion, a party's state of mind may be alleged generally. *See, e.g.*, *Churchill Downs, Inc. NLR Entm't, LLC v. Carstanjen*, No. 14-03342, 2015 WL 5854134, at *9 (D.N.J. Oct. 5, 2015) (denying motion to dismiss defamation claim since "a party's state of mind often cannot be demonstrated directly; for that reason . . . 'malice, intent, knowledge, and other conditions of a person's mind may be alleged generally'") (quoting Fed. R. Civ. P. 9(b)).  Further, Plaintiffs support this assertion by alleging that Plaintiffs sent letters to HUMC and Carrier denying the veracity of these statements.  (*See* Compl. ¶ 44 ("[T]he statements made by DBR, aside from shocking and wholly inappropriate, are, at a minimum, erroneous and inaccurate . . . ."); *id.* ¶ 46 (noting that "neither HUMC nor Carrier has disputed, in any respect, that the statements made by DBR led to HUMC and Carrier deciding not to proceed with the Transaction, and no one has disputed that DBR made, in sum or substance, the statements that were noted").  For purposes of deciding the instant motion, these allegations are sufficient to find that at the very least Drinker Defendants were negligent. *See, e.g.*, *Cruz*, 2010 WL 2989987, at *3; *Churchill Downs, Inc.*, 2015 WL 5854134, at *9.

Therefore, Plaintiffs have sufficiently alleged a *prima facie* claim of defamation.

### ii.       Privilege Defense

"Defamation claims involve a balancing between protecting reputations against false attacks and serving the public interest of free communication." *Cruz*, 2010 WL 2989987, at *4.  Common interest privilege and litigation privilege are two ways that the law strikes this balance. *See id.*  As an affirmative defense, Drinker Defendants have the burden of establishing that the existence of these privileges is "apparent from the face of the complaint." *See Mangan*, 834 F. Supp. 2d at 209 (quoting *Bethel v. Jendoco*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978)).

### 1.    Common Interest Qualified Privilege

Under New Jersey law, a common interest qualified privilege applies to communications "made bona fide upon any subject in which the party communicating has an interest, or in reference to which he has a duty . . . if [the communication is] made to a person having a corresponding interest or duty. . . ." *Prof'l Recovery Servs., Inc. v. Gen. Elec. Capital Corp.*, 642 F. Supp. 2d 391, 400 (D.N.J. 2009) (quoting *Williams v. Bell Tel. Labs., Inc.*, 623 A.2d 234, 240 (N.J. 1993)). To determine if this qualified privilege applies, the Court must examine three elements: "(1) the appropriateness of the occasion on which the defamatory information is published, (2) the legitimacy of the interest thereby sought to be protected or promoted, and (3) the pertinence of the receipt of that information by the recipient." *Id.* at 401 (citing *Bainhauer v. Manoukian*, 520 A.2d 1154, 1169 (N.J. Super. Ct. App. Div. 1987)).

Applying the *Bainhauer* test to this case it is not completely clear from the face of the Complaint that Drinker Defendants are entitled to the common interest privilege.  Although arguably Drinker Defendants can show the second element—given that Carrier and HUMC, as partners in the potential joint venture with JNL, had a legitimate interest in the communication— the Complaint falls short for the remaining elements.  First, the Complaint provides little about the occasion of the publication, stating only that JNL's counsel was "advised that the information came from DBR through a 'recently hired partner'" who "was on a call where the information regarding Mr. Lasko was revealed."  (*See* Compl. ¶¶ 38 & 39).  These allegations provide little about who was present during that call and therefore, it is impossible for this Court to determine the appropriateness of the occasion.  Second, because it is unclear who exactly were the recipients of this communication, it is also unclear whether the statements were actually pertinent.  Thus, although it may appear that this privilege could apply, at this stage the Court cannot make that

determination.  *See Cruz*, 2010 WL 2989987, at *5.

Moreover, even assuming that the privilege was apparent on the face of the Complaint, the Court would still be unable to dismiss on this basis.  The common interest privilege is not absolute and may be lost by a showing that the defendant abused the privilege.  *See Williams*, 623 A.2d at 240.  "The privilege is abused if (1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published."  *Id.* (citations omitted).  But whether the qualified privilege was abused is a question for the jury to decide.  *Bainhauer*, 520 A.2d at 1171.  And importantly, because the qualified privilege is an affirmative defense, Plaintiffs had no duty to raise any allegations in the Complaint to overcome it on a motion to dismiss.  *See, e.g.*, *Amoroso v. Schuh*, 278 F. Supp. 3d 1106, 1114 (W.D. Wis. 2017) ("Although perhaps ultimately defendants' strongest defense, a request that the court find the common interest privilege applies as a matter of law is premature.  Since the conditional privilege is an affirmative defense, plaintiff need not overcome it with the allegations in his complaint."); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) ("[P]laintiff need not plead facts responsive to an affirmative defense before it is raised."); 5C Wright, *et al.*, *supra* § 1276 (noting that the plaintiff has no obligation to plead facts in anticipation of an affirmative defense).

Consequently, for purposes of the instant motion the Court cannot find that the common interest privilege bars Plaintiffs' claims.  The Court takes no position as to the strength of Plaintiffs' position and whether it will ultimately prevail with a more developed record.

### 2.    Litigation Privilege

Drinker Defendants assert that the statements in question are also subject to the litigation privilege.  (Defs. Mov. Br. at 25).  The litigation privilege may be applied to "communications (1)

made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris,* 661 A.2d 284, 289 (N.J. 1995). New Jersey courts have expanded the scope of this privilege to encompass certain communications made outside judicial proceedings, so long as they are made in contemplation of litigation. *See, e.g.*, *Peterson v. Ballard*, 679 A.2d 657, 659 (N.J. Super. App. Div. 1996) (applying litigation privilege to an attorney's interview of a witness in anticipation of trial); *Ruberton v. Gabage*, 654 A.2d 1002, 1007 (N.J. Super. App. Div. 1995) (applying privilege to attorney's statements made during a settlement conference in a wrongful discharge suit). Thus, "[t]he only limitation New Jersey places upon the privilege is that the statements at issue 'have some relation to the nature of the proceedings.'" *Rabinowitz v. Wahrenberger*, 966 A.2d 1091, 1096 (N.J. Super. App. Div. 2009) (quoting *Hawkins*, 661 A.2d at 288).

Here, Drinker Defendants cannot show the application of this privilege because the statements were not made in a judicial or quasi-judicial proceeding. As alleged by the Complaint, at the time Drinker Defendants made the statement none of the parties contemplated litigation, but rather, were in the final stages of contractual negotiations. (*See* Compl. ¶¶ 38 & 39). Even assuming that these negotiations were contentious, that is insufficient for the application of the litigation privilege. *See, e.g.*, *Source Entm't Grp. v. Baldonado & Assocs., P.C.*, No. 06-2706, 2007 WL 1580157, at *7 (D.N.J. May 31, 2007) (finding that litigation privilege was not applicable because there was no litigation pending); *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2007 WL 4554208, at *21 n.13 (D.N.J. Dec. 21, 2007), *aff'd,* 552 F. App'x 110 (3d Cir. 2014) (noting that the litigation privilege did not apply to communications made by an attorney before litigation was commenced, even where "the relationship between the parties is contentious

or adversarial").

Similarly unavailing is Drinker Defendants' contention that because the statements related to the criminal proceedings against Esformes, they have established that "the statements at issue have some relation to the nature of the proceedings." (Defs. Mov. Br. at 27). Drinker Defendants appear to think, without providing any applicable legal support, that the privilege attaches so long as the statement related to *some* judicial proceeding. (*See id.*). That is not so. The litigation privilege applies only to communications "made *in* judicial or quasi-judicial proceedings" in order "to achieve the objects of *the* litigation"; the privilege does apply to communications made about some other judicial proceeding for purposes unrelated to the objects of that judicial proceeding. *See Hawkins*, 661 A.2d at 289 (emphasis added). Further, this "[i]mmunity does not extend to statements published outside of a judicial proceeding to persons not connected with it." *Williams v. Kenney*, 877 A.2d 277, 287 (N.J. Super. App. Div. 2005) ("Otherwise, a person could file defamatory statements in a judicial proceeding with impunity and then proceed to republish [them] at will under the cloak of immunity.") (internal quotation marks omitted). Drinker Defendants made the statements outside the Esformes proceedings to entities (HUMC and Carrier) that are not remotely connected to Esformes's prosecution. Consequently, the statements are simply not be protected by the litigation privilege. *See id.*.

C.    **Claim 3: False Light Claim**

A claim of false light under New Jersey law has two requisite elements: "(1) the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person; and (2) the [defendant] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *See Leang*, 969 A.2d at 1116 (internal quotation marks omitted). False light and defamation are "closely allied, and the same

considerations apply to each." *See Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981).

Drinker Defendants contend that since the statements were made only to Carrier and HUMC, the claim must fail because the statements were not widely disseminated. (*See* Defs. Mov. Br. at 40). Courts in this district, however, have refused to dismiss false light claims where the statements were made within a limited circle of individuals. *See, e.g.*, *Read v. Profeta*, No. 15-2637, 2017 WL 123438, at *11 (D.N.J. Jan. 11, 2017) (denying motion to dismiss false light claim where statements were published to "third parties"); *Torrey v. New Jersey*, No. 13-1192, 2014 WL 941308, at *21 (D.N.J. Mar. 11, 2014) (denying motion to dismiss where statements were made to a representative of the sheriff's office); *Gibbs v. Massey*, No. 07-3604, 2009 WL 838138, at *11–12 (D.N.J. 2009) (finding that an offensive statement made to persons at plaintiff's place of employment is sufficient for false light claim).

Here, the Complaint alleges that the statements were made to a group of representatives of Carrier and HUMC. (*See* Compl. ¶¶ 38 & 39). As Plaintiffs contend, Carrier and HUMC are large corporate entities with many employees. (*See* Pls. Opp. Br. at 27). Thus, at the very least Plaintiffs are entitled to the reasonable inference that given the size of the corporate entities receiving the information, the offensive statements were communicated to a sufficient number of people. *See Waldman Seafood, Inc. v. Mical Seafood, Inc.*, No. 12-2054, 2014 WL 2887855, at *6 (D.N.J. June 24, 2014) (noting that the false light tort requires that the disputed publicity "at least have the capacity to give rise to a false public impression as to the plaintiff") (quoting *Romaine*, 537 A.2d at 290. Therefore, Plaintiffs have sufficiently alleged publication for purposes of the instant motion.

Drinker Defendants also contend that the statements reflected public information, and thus,

cannot give rise to liability. (Defs. Mov. Br. at 41). As explained above, however, the statements at issue go beyond merely stating that Lasko knew or had a relationship with Esformes; these statements infer that Lasko participated in Esformes's criminal enterprise and is being investigated by the government as a result. And none of the public documents that Drinker Defendants point to sufficiently reflect the information contained in the offending statements. Thus, at least for purposes of the instant motion, it cannot be said that Drinker Defendants were "merely giv[ing] further publicity to information about [Lasko] that is already public." *See* Restatement (Second) of Torts § 652D, cmt. b. In short, Plaintiffs have sufficiently alleged a false light claim.

### D. Claim 4: Tortious Interference With Prospective Business Relations

In New Jersey, a Plaintiff asserting a claim for tortious interference with prospective business relations must show: "(1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart*, 563 A.2d at 37). With respect to the third element, the New Jersey Supreme Court has clearly stated that it is "fundamental to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Printing Mart-Morristown*, 563 A.2d at 34 (internal quotation marks omitted). "Since *Printing Mart*, a clear-cut consensus has emerged that if an . . . agent is acting on behalf of his or her . . . principal, then no action for tortious interference will lie." *DiMaria Const., Inc. v. Interarch*, 799 A.2d 555, 561 (N.J. Super. App. Div. 2001), *aff'd*, 797 A.2d 137 (N.J. 2002) (collecting cases).

Drinker Defendants contend that this claim must be dismissed because, as Carrier's attorney, they were acting as Carrier's agent. (Defs. Mov. Br. at 42).

"It is clear that an attorney acts as an agent for his client." *Hewitt v. Allen Canning Co.*, 728 A.2d 319, 322 (N.J. Super. App. Div. 1999) (citing *Baldasarre v. Butler*, 625 A.2d 458, 464 (N.J. 1993)); *see also Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000) (dismissing tortious interference claim by third-party against attorney who was acting as an agent of his client in a workers' compensation case); Restatement (Third) of the Law Governing Lawyers § 57(3) (2000) ("A lawyer who advises or assists a client to make or break a contract, to enter or dissolve a legal relationship, or to enter or not enter a contractual relation, is not liable to a non-client for interference with contract or with prospective contractual relations or with a legal relationship, if the lawyer acts to advance the client's objectives without using wrongful means.").

Here, it is undisputed that Drinker Defendants were acting as Carrier's attorney. (*See* Compl. ¶ 45 n.5; Pls. Opp. Br. at 30; Answer ¶¶ 1 & 45). Thus, as Carrier's agent, no action for tortious interference will lie against Drinker Defendants. *See Interarch*, 799 A.2d at 561. Further, the Complaint contains no allegations that Drinker Defendants were acting outside the scope of their agency. (*See generally* Compl.); *White v. Smiths Detection, Inc.*, No. 10-4078, 2011 WL 1466160, at *4 (D.N.J. Apr. 15, 2011) ("Plaintiff does not allege that any of the defendants acted outside the scope of employment or agency and therefore [the tortious interference claim] is dismissed."); *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at *7 (D.N.J. Nov. 16, 2009).

Plaintiffs' sole argument in opposition to this point is that the statements were made to Carrier and HUMC, and HUMC was not Drinker Defendants' client. (Pls. Opp. Br. at 30). But this is beside the point. Carrier was a party to the contemplated business relation, and as such, it

cannot be held liable for its tortious interference.  *See Printing Mart*, 563 A.2d at 34.   And as just

stated, this protection extends to Drinker Defendants because they were acting as Carrier's agents.

*See Interarch*, 799 A.2d at 561.  Absent allegations that Drinker Defendants were acting outside

the scope of their agency, Drinker Defendants were acting on behalf of Carrier, i.e., Drinker

Defendants' actions were Carrier's actions.  *See Obendorfer v. Gitano Grp., Inc.*, 838 F. Supp.

950, 956 (D.N.J. 1993) ("Where, as here, the employer ratified and participated in the conduct

complained of, there exists no question but that the employer acted through its agents."); *cf.*

Restatement (Third) Of Agency § 7.01 cmt. e (2006) (noting that this protection "is inapplicable

when the agent's conduct consists of interference with . . . prospective contractual relationships to

which the agent's principal *is not* a party") (emphasis added).  It is thus irrelevant that HUMC,

who was Carrier's partner in the potential joint venture with JNL, was also a recipient of the

communication.

    To the extent that Plaintiffs' tortious interference claim revolves around a theory that this

communication interfered with a contemplated business relation between only JNL and HUMC,

the Complaint negates such a finding because HUMC made clear "that *any* joint venture would [

] include Carrier."   (Compl. ¶ 25 (emphasis added)).   Consequently, the Court dismisses the

tortious interference claim.

## IV.    Conclusion

    For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Drinker

Defendants' motion.  The motion is denied as to Claims Two and Three, but granted as to Claim

Four.  An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
