UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| JNL MANAGEMENT LLC, et al., | Civil Action No. |
| Plaintiffs, | 2:18-CV-5221-ES-SCM |
| v. | **OPINION ON** |
| | **DISCOVERY DISPUTES** |
| HACKENSACK UNIVERSITY MEDICAL CENTER, et al., | **[D.E. 43, 44, 47, 68, 78]** |
| Defendants. | |

**STEVEN C. MANNION**, United States Magistrate Judge.

Before this Court is an informal discovery motion filed via the parties' joint dispute letter regarding documents and communications Plaintiffs JNL Management, LLC ("JNL") and its manager, Jonathan Lasko ("Mr. Lasko"), (collectively the "JNL Plaintiffs") seek and Defendants Antonio Pozos ("Mr. Pozos") and Drinker Biddle & Reath, LLP ("Drinker") (collectively "Drinker Defendants") consider to be protected by attorney-client privilege, work product doctrine, and/or common interest doctrine.[1] Also before this Court are the JNL Plaintiffs' informal motions to compel non-party subpoenas served upon Carrier Clinic, Inc. ("Carrier") and Hackensack University Medical Center ("HUMC")—who were both defendants in this action when the parties' filed their joint dispute letter.[2] The Court reviewed the parties' joint dispute letter and their

---

[1] (ECF Docket Entry No. ("D.E.") 43, Joint Dispute Letter). Unless indicated otherwise, the Court will refer to documents by their docket entry number and the page numbers assigned by the Electronic Case Filing System.

[2] It is the Court's understanding that both Carrier and HUMC assert the same privilege issues presented in the joint dispute letter. (*See* D.E. 64, Letter; D.E. 68, Joint Letter).

respective submissions, heard oral argument, and conducted *in-camera* review.[3]  For the reasons

set forth herein, Drinker Defendants' informal motion for an order of protection is **GRANTED IN**

**PART** and **DENIED IN PART**, and Plaintiffs' informal motions to compel Carrier and HUMC

are **GRANTED IN PART** and **DENIED IN PART**;

## I.      BACKGROUND AND PROCEDURAL HISTORY[4]

This action concerns allegations arising out of an alleged breach of contract. Around May

2016, the JNL Plaintiffs began discussions with HUMC regarding a joint venture to establish a

substance abuse and rehabilitation center in Mahwah, New Jersey (the "Facility").[5] HUMC

retained Winne Banta Basralian & Kahn, P.C. as its counsel.[6] In June 2017, HUMC invited Carrier

to join the proposed joint venture,[7] and Carrier retained Drinker as its counsel.[8] In July 2017, JNL,

HUMC and Carrier executed a letter of intent ("LOI") in connection with the proposed joint

venture.[9] The LOI detailed the purpose of the joint venture, contemplated the creation of a

"Management Entity"—a not for profit entity owned 51% by HUMC and 49% by Carrier—and a

---

[3] Fed. R. Civ. P. 78.

[4] The allegations set forth within the pleadings and motion record are relied upon for purposes of this informal motion only. The Court has made no findings as to the veracity of the parties' allegations.

[5] (D.E. 44-1, Sparta's Cert., at ¶ 3).

[6] (*Id*. at ¶ 5).

[7] (*Id*. at ¶ 6).

[8] (D.E. 44-3, Kendall's Cert., at ¶ 4).

[9] (D.E. 1-1, Joint Venture Letter of Intent, at 1).

"Real Estate Entity" —a separate entity owned 100% by a for profit single purpose entity to be created by JNL—and noted the acquisition of a property for the Facility.[10]

In January 2018, HUMC received a report prepared by Marathon Strategies ("Marathon Report") it had commissioned, which revealed that Mr. Lasko had personal and business ties to Philip Esformes ("Mr. Esformes"),[11] an individual recently convicted of Medicare fraud,[12] and shared it with Carrier and its counsel, Drinker.[13] On February 14, 2018, Mark Sparta ("Mr. Sparta"), who at the time was the Executive Vice President and Chief Operating Officer of HUMC,[14] other HUMC representatives—including its general counsel, Audrey Murphy ("Ms. Murphy")—Carrier representatives, and Carrier's counsel—including Mr. Pozos of Drinker— participated in a conference call.[15] During the call, Mr. Pozos discussed the contents of the Marathon Report, public records relating to Mr. Esformes's criminal case, and the potential risks to Carrier, HUMC and the proposed joint venture.[16] Prior to joining Drinker, Mr. Pozos worked as a federal prosecutor at the U.S. Department of Justice ("DOJ"), but certified that although he

---

[10] (*Id*. at 2).

[11] (D.E. 1, Compl., at ¶¶ 1, 42–43).

[12] (D.E. 78, Joint Letter, at 3). When the JNL Plaintiffs filed their Complaint, Mr. Esformes was awaiting trial. (D.E. 1, Compl., at ¶ 38, n.3).

[13] (D.E. 44-1, Sparta's Cert., at ¶¶ 11–13).

[14] (D.E. 1, Compl., at ¶ 15).

[15] (D.E. 44-1, Sparta's Cert., at ¶ 14; D.E. 44-4, Pozos's Cert., at ¶ 10).

[16] (D.E. 44-1, Pozos's Cert., at ¶ 11).

was aware of the Esformes criminal case, he "did not work directly on the Esformes indictment while at the DOJ."[17]

On February 16, 2018, in two separate telephone calls, Mr. Sparta, along with other HUMC representatives, advised JNL and Mr. Lasko that HUMC would no longer proceed with the joint venture and provided reasons for its decision.[18] On February 20, 2018, the JNL Plaintiffs' counsel wrote Drinker memorializing the February 16 communications; requesting Drinker to advise if Drinker "did not make, in sum or substance," numerous statements (the "Statements") to HUMC and Carrier; advising that Mr. Lasko would hold Drinker liable for damages; and providing notice that Drinker must preserve records.[19] The JNL Plaintiffs' counsel also wrote a similar letter to HUMC and Carrier.[20] Drinker acknowledged receipt of the letter and advised that it "does not discuss with third parties [its] advice to its clients."[21] On March 5, 2018, HUMC and Carrier executed a common interest agreement (the "Common Interest Agreement").[22]

The JNL Plaintiffs commenced this action against Drinker Defendants, HUMC, and Carrier in April 2018.[23] The JNL Plaintiffs allege that HUMC and Carrier breached the implied covenant of good faith and fair dealing, and allege defamation, false light, and tortious interference with

---

[17] (*Id.* at ¶¶ 4, 8).

[18] (D.E. 44-1, Sparta's Cert., at ¶ 16).

[19] (D.E. 47, Pls.' Opp'n, Ex. 4).

[20] (*Id.* at Ex. 3).

[21] (*Id.* at Ex. 5).

[22] (D.E. 44-3, Kendall's Cert., at ¶ 17; D.E. 43, Joint Dispute Letter, at 3–4).

[23] (D.E. 1, Compl.).

prospective business relations against Drinker Defendants.[24] The JNL Plaintiffs contend HUMC and Carrier refused to proceed with a joint venture to establish the Facility after Mr. Pozos misinformed HUMC and Carrier about Mr. Lasko's relationship with Mr. Esformes.[25]

The parties filed the instant joint dispute letter in October 2018, containing privilege logs from Drinker Defendants, HUMC, and Carrier.[26] In November 2018, the Court ordered counsel to confer and provide the Court with "a joint submission that indicates what documents listed on the defendant privilege log(s), if any, have been provided to plaintiffs but are identified on the log(s) because a particular version includes attorney notes, highlights, etc."[27] In December 2018, the Court ordered counsel to provide "hardcopies of the items listed in each of the three privilege logs by 12/19/18 for in-camera review."[28]

On January 14, 2019, the Court held a telephone status conference and the JNL Plaintiffs advised they settled with HUMC and Carrier.[29]

On March 1, 2019, the JNL Plaintiffs submitted a joint letter with Carrier—now a non-party—concerning the JNL Plaintiffs' subpoena served upon Carrier seeking information that Carrier deems privileged.[30] Carrier asserts that "the common interest privilege issues addressed in

---

[24] (*Id*. at ¶¶ 51–74).

[25] (*Id*. at ¶¶ 1, 42–43).

[26] (D.E. 43, Joint Dispute Letter).

[27] (D.E. 52, Text Order).

[28] (D.E. 58, Text Order).

[29] (D.E. 62, Stip. of Dismissal).

[30] (D.E. 68, Letter).

[the privilege dispute filed while it was a party] apply with equal force to the non-party discovery now being sought from Carrier."[31]

On May 2, 2019, the Honorable Esther Salas, U.S.D.J. granted in part and denied in part Drinker Defendants' motion for judgment on the pleadings, permitting the JNL Plaintiffs' claims for defamation and false light to continue.[32]

On May 22, 2019, Drinker Defendants and the JNL Plaintiffs submitted a joint letter to advise the Court of recent developments.[33]

## II.    **MAGISTRATE JUDGE AUTHORITY**

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court.[34] This District specifies that magistrate judges may determine all non-dispositive pre-trial motions, which include discovery motions.[35] Decisions by magistrate judges must ordinarily be upheld unless "clearly erroneous or contrary to law,"[36] but where the decision concerns a discovery dispute the ruling "is entitled to great deference and is reversible only for abuse of discretion."[37]

---

[31] (D.E. 68, Letter, at 3).

[32] (D.E. 76, Opinion; D.E. 77, Order).

[33] (D.E. 78, Joint Letter).

[34] 28 U.S.C. § 636(b)(1)(A).

[35] L. Civ. R. 72.1(a)(1); 37.1.

[36] § 636(b)(1)(A).

[37] *Kresefsky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998).

## III.    LEGAL STANDARDS

Drinker Defendants seek an order (1) protecting from disclosure documents identified in the privilege logs of Drinker Defendants, HUMC, and Carrier; and (2) barring the JNL Plaintiffs from obtaining or relying upon alleged privileged information that Mr. Pozos provided to HUMC and Carrier, or relying upon such information that HUMC later disclosed without authorization to JNL and Mr. Lasko.[38]  Together with the joint dispute letter, Drinker Defendants, HUMC, and Carrier produced privilege logs identifying withheld documents on the basis of attorney-client privilege, work product doctrine, and common interest doctrine.  Following oral argument, Drinker Defendants produced an addendum to their privilege log.[39]  Drinker Defendants, HUMC, and Carrier produced the documents from their privilege logs for *in-camera* inspection.

As noted above, since the filing of this joint dispute letter, the JNL Plaintiffs settled with HUMC and Carrier, making them non-parties. The JNL Plaintiffs previously advised that the settlement does not impact Drinker Defendants' informal motion for a protective order and that the pending requests for documents from HUMC and Carrier are captured in subpoenas.[40]

### A.    Attorney-Client Privilege

This Court sits in diversity and therefore must apply New Jersey law to determine issues of attorney-client privilege.[41] New Jersey's attorney-client privilege attaches to communications made between lawyers and clients "in the course of that relationship and in professional

---

[38] (D.E. 43, Joint Dispute Letter, at 3).

[39] (D.E. 53, Drinker Defs.' Letter, Ex. A).

[40] (D.E. 64, Letter).

[41] Fed. R. Evid. 501; *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 156 (D.N.J. 2008).

confidence."[42] "[T]he attorney-client privilege generally applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client."[43] The privilege extends to corporations and permits communications between an attorney and a corporation's employees to be protected.[44] A communication made in the course of the relationship between a lawyer and client "shall be presumed to have been made in professional confidence unless knowingly made within the hearing of some person whose presence nullified the privilege."[45] Despite the presumption of confidentiality, "the essence of the privilege" is limited to communications intended or expected to be confidential.[46] The privilege does not apply simply because an attorney was involved in communications.[47]

The privilege is not strictly limited to legal advice, but applies only to "situations in which lawful legal advice is the object of the relationship."[48] Importantly, business advice is not protected by the attorney-client privilege because "[o]nly if an attorney is acting as a lawyer and giving advice with respect to the legal implications of an issue may the privilege be properly invoked."[49]

---

[42] N.J.S.A. 2A:84A–20(1).

[43] *Hedden v. Kean Univ.*, 434 N.J. Super. 1, 10 (App. Div. 2013).

[44] *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990).

[45] N.J.S.A. 2A:84A–20(3).

[46] *State v. Schubert*, 235 N.J. Super. 212, 221 (App. Div. 1989).

[47] *In re Riddell Concussion Reduction Litig.*, No. 13-7585, 2016 WL 7108455, at *3 (D.N.J. Dec. 5, 2016).

[48] *Rivard v. Am. Home Prods., Inc.*, 391 N.J. Super. 129, 154 (App. Div. 2007) (quoting *In Re Gonnella*, 238 N.J. Super. 509, 512 (Law. Div. 1989)).

[49] *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *4.

This rule appears straight-forward, yet "its application is difficult, since in the corporate community, legal advice 'is often intimately intertwined with and difficult to distinguish from business advice.'"[50] In determining whether advice is in the business versus legal context "the court's inquiry is focused on whether the communication is designed to meet problems which can fairly be characterized as predominately legal."[51] This Court is mindful that it is not uncommon for an attorney's role to be mixed. The claimant of the privilege "must demonstrate that the communication would not have been made but for the client's need for legal advice or services."[52]

Protected communications can be written or oral. Generally, "confidential communications relaying factual information in furtherance of an attorney's representation are privileged," yet "underlying facts themselves are <u>never</u> privileged."[53] When an attorney conducts an investigation, it must be "for the purpose of preparing for litigation or providing legal advice" in order for the privilege to apply.[54] Regarding emails, "emails in which in-house or outside attorneys are merely sent copies of the text of the email, or in which they are merely one of many addresses, should not be privileged, unless the email is directed to the attorney or sent by the attorney."[55] If a privileged

---

[50] *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98–99 (D.N.J. 1990) (quoting *Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1205 (8th Cir.)).

[51] *Id.* at 99 (citation omitted).

[52] *Id.* (quoting *First Chicago Int'l v. United Exch. Co.*, 125 F.R.D. 55, 57 (S.D.N.Y. 1989)).

[53] *Margulis v. Hertz Corp.,* No. 14-1209, 2017 WL 772336, at *5 (D.N.J. Feb. 28, 2017).

[54] *Payton v. New Jersey Tpk. Auth.*, 148 N.J. 524, 551 (1997).

[55] *Margulis*, 2017 WL 772336, at *6 (quoting *In re Avantel, S.A.*, 343 F.3d 311, 321 n.11 (5th Cir. 2003)).

email has attachments, "each attachment must individually satisfy the criteria for falling within the privilege."[56]

"Merely because a legal issue can be identified that relates to on-going communications does not justify shielding the communications from discovery."[57] The Court must determine the primary role that an attorney played with regard to each claimed privileged document.[58] The party asserting the privilege bears the burden to prove that the privilege applies to any given communication.[59]

The privilege can be waived, only by a client and not an attorney, when a privileged communication is voluntarily disclosed to a third party.[60] However, not all disclosures amount to waivers,[61] and a waiver-related doctrine may apply wherein the privilege is preserved.[62] N.J.S.A. 2A:84A–29 governs waiver and states:

> A person waives his right or privilege to refuse to disclose or to prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted with anyone not to claim the right or privilege or, (b) without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.[63]

---

[56] *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990).

[57] *In re Riddell Concussion Reduction Litig.*, No. 13-7585, 2016 WL 7108455, at *5 (D.N.J. Dec. 5, 2016).

[58] *Payton*, 148 N.J. at 550.

[59] *Hedden v. Kean Univ.*, 434 N.J. Super. 1, 12 (App. Div. 2013).

[60] *Id.* at 15.

[61] *Id.*

[62] *O'Boyle v. Borough of Longport*, 218 N.J. 168, 198–99 (2014).

[63] N.J.S.A. 2A:84A–29.

### B. Work Product Doctrine

Unlike issues of attorney-client privilege, a uniform federal work product doctrine applies even in diversity cases.[64] Under Federal Rule of Civil Procedure 26(b)(3), the work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[65] A litigant who invokes the work product doctrine bears the burden of proving both that the withheld documents were prepared because "of reasonably anticipated litigation" and that the documents were not prepared for any other purpose.[66] Generally, "a party must show more than a remote prospect, an inchoate possibility, or a likely chance of litigation."[67] "Rather, a party must show that there existed 'an identifiable specific claim of impending litigation when the materials were prepared.'"[68] "The mere involvement of, consultation with, or investigation by an attorney does not, in itself, evidence the 'anticipation of litigation.'"[69]

Compared to waiver of the attorney-client privilege, "disclosure to a third party does not necessarily waive the protection of the work-product doctrine" because the work product doctrine is intended to prevent an attorney's work product from becoming available to an adversary.[70] The

---

[64] *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988).

[65] Fed. R. Civ. P. 26(b)(3).

[66] *Beachfront N. Condo. Ass'n v. Lexington Ins. Co.*, No. 14-6706, 2015 WL 4663429, at *4 (D.N.J. Aug. 5, 2015).

[67] *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003) (citations omitted).

[68] *Id.* (citations omitted).

[69] *Id.*

[70] *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991).

work product doctrine's "protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants."[71] At the same time, "the work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation."[72] Upon a showing of "substantial need" and "undue hardship," work prepared in anticipation of litigation by an attorney or his agent is discoverable.[73] However, "'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation'" may become "discoverable only upon a showing of rare and exceptional circumstances."[74] Neither underlying facts[75] nor documents routinely prepared in the ordinary course of business are protected by the work product doctrine.[76]

### C. Common Interest Doctrine

Similar to the attorney-client privilege, this Court must apply New Jersey law for the common interest doctrine. The New Jersey common interest doctrine is not an independent privilege; it is a waiver-related doctrine.[77] "[T]he common interest rule does not create a new privilege. Rather, it permits disclosure of privileged material, attorney-client confidential

---

[71] *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003).

[72] *Id.* at 663.

[73] *Id.* (quoting Fed. R. Civ. P. 26(b)(3)).

[74] *Id.*

[75] *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 422 (D.N.J. 2009).

[76] *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003).

[77] *Margulis v. Hertz Corp.*, No. 14-1209, 2017 WL 772336, at *8 (D.N.J. Feb. 28, 2017).

communications or work product, to third parties without waiving any privilege as long as the applicable features of the common interest rule in the jurisdiction are satisfied."[78]

In New Jersey, to avoid waiver of privilege when sharing protected communications, the disclosure of privileged information must be (1) "made due to actual or anticipated litigation" (2) "for the purpose of furthering a common interest," and (3) "made in a manner to preserve the confidentiality of the disclosed material."[79]

> *O'Boyle* has made clear that disclosure may occur prior to the commencement of litigation; may involve communications between counsel for one party and a representative of another party; that the shared interest need not be strictly legal but also may be commercial; and that the parties' shared interests need not be identical—a "common purpose" will suffice.[80]

The lack of strict requirements, beyond the aforementioned factors, evinces that "New Jersey law favors an extremely expansive view of the doctrine."[81] This Court recognizes that "[c]ertain aspects of the common interest doctrine are subject to wide-ranging interpretations across the Country."[82]

## IV.    DISCUSSION

Drinker Defendants rely on the privilege logs to assert privileges as to certain documents. Their brief reiterates the contents of the privilege log, yet fails to assert any argument as to why the Court should maintain the asserted privileges. Drinker Defendants instead mainly focus on asserting privilege as to the Statements that the JNL Plaintiffs allege Mr. Pozos made during the

---

[78] *O'Boyle v. Borough of Longport*, 218 N.J. 168, 197 (2014).

[79] *Id.* at 198–99 (citing *LaPorta v. Gloucester Cty.*, 340 N.J. Super. 254, 262 (App. Div. 2001)).

[80] *Margulis,* 2017 WL 772336, at *9 (citing *O'Boyle*, 218 N.J. at 199).

[81] *Id.*

[82] *Id.*

February 14 telephone conference, and which HUMC relayed to the JNL Plaintiffs on February 16. Drinker Defendants note that Mr. Pozos has denied making these "precise statements":[83]

1. Mr. Lasko is a "person of interest" in connection with the prosecution of Philip Esformes and the Department of Justice "is not done with" Mr. Lasko;
2. Mr. Esformes maintains a financial interest in JNL;
3. Mr. Lasko had, or has, a business relationship with a "Mr. Delgado," a person involved in the Esformes matter; and
4. Mr. Lasko is being investigated for possibly referring patients to facilities in which Mr. Esformes had or has an interest.[84]

Drinker Defendants seek an order protecting (1) the privilege logs, and (2) the Statements. The Court will analyze each of these categories separately for each asserted privilege. As a preliminary matter, the Court notes that the JNL Plaintiffs do not assert that the attorney-client privilege is inapplicable to either category. Instead, the JNL Plaintiffs address only the common interest doctrine. However, before reaching the common interest doctrine, "the first question is always whether an underlying communication is privileged to begin with, whether it be attorney-client, work-product, or otherwise. If that is established, the Court may then consider whether the privileged document was shared with someone and whether such sharing was permissible."[85]

### A. Attorney-Client Privilege and Work Product Doctrine

This Court first reviews all documents asserting the attorney-client privilege and work product doctrine. Many of the documents contain a mixture of both legal and business advice, and thus this Court's inquiry focuses on whether the communications were "designed to meet problems which can fairly be characterized as predominately legal."[86]

---

[83] (D.E. 44, Drinker Defs' Br., at 12).

[84] (D.E. 1, Compl., at ¶ 38).

[85] *Margulis,* 2017 WL 772336, at *8 (citing *O'Boyle*, 218 N.J. at 198).

[86] *Leonen v. Johns-Manville*, 135 F.R.D. 94, 99 (D.N.J. 1990) (citation omitted).

*In-camera* inspection of the privilege logs demonstrate that the attorney-client privilege applies to the following documents: Carrier's privilege log documents bates-stamped PRIV 00015; 00016; and 00017; HUMC's privilege log documents bates-stamped 29-30; 31-32; 56-57; 135-147; 148-151; and 156-162 and Drinker's privilege log documents bates-stamped 1055-1080; and 1175-1180. Although some of these documents contain business advice, they were predominantly legal and necessitate protection. These are the types of communications and documents intended to be protected by the attorney-client privilege.

Further, the attorney client privilege does not apply to the following documents: Carrier's privilege log documents bates-stamped PRIV 00001; 00002; 00003; 00004—with the exception of the last two sentences of paragraph 5, which shall be redacted prior to production; 00005; 00006; 00007; 00008; 00009; 00010—with the exception of the highlighted portion, which shall be redacted prior to production; 00011; 00012; 00013; and 00014; HUMC's privilege log documents bates-stamped 1; 33-42—with the exception of the top email on 33, which shall be redacted prior to production; 43-44—with the exception of the bottom email on 43, which shall be redacted prior to production; 46-55; 68-69; 70-72—with the exception of 72 in its entirety, which shall be redacted prior to production; 73-74; 75; 81-92; 93-94; and 117-118; and Drinker's privilege log documents bates-stamped 1-9—with the exception of the last three sentences on 8 and the entirety of 9; 1031-1033—with the exception of the last two sentences of paragraph 5, which shall be redacted prior to production; 1034-1043—with the exception of the last three sentences on 1041 and the entirety of 1042; 1054; 1163-1166; 1167-1168; 1169-1171; and 1172-1174.

These documents cannot be characterized as predominantly legal; especially as many of the documents do not contain any legal advice. Instead, the communications concern business ramifications and non-legal concerns. Much of the documents concern lease negotiations, terms of

rent, the value of the property for the Facility, and overall business due diligence before finalizing the joint venture. Counsel acted in a capacity as a business negotiator[87] and business advisor rather than a legal advisor. "For the privilege to apply, the attorney must [be] 'acting as an attorney and not, e.g., as a business advisor.'"[88] Some of these documents concern scheduling conferences and meetings. Drinker Defendants failed to meet their burden of establishing that these documents constitute privileged communications.

The Court makes special note of Drinker's privilege log documents bates-stamped 1-9 and 1034-1043, which are Mr. Pozos's nearly identical outlines dated February 7 in preparation of the February 14 telephone call, with 1034-1043 containing some handwritten notations and a graph explaining the proposed joint venture structure. Simply claiming that outlines and notes reflect discussion between counsel and client is insufficient to justify application of the privilege.[89] "Although an attorney's notes are not a communication between the attorney and client *per se,* they are privileged if they record the confidential legal advice given or the information received to render legal advice."[90] The outlines mostly contain information unrelated to legal advice, and do not reflect communications where Mr. Pozos gave confidential legal advice. Instead, the outlines

---

[87] *Georgia–Pac. Corp. v. GAF Roofing Mfg. Corp.,* No. 93-5125, 1996 WL 29392, at *4 (S.D.N.Y. 2001) (holding that the attorney-client privilege did not apply to communications made between an attorney and his corporate client while the attorney was acting as a contract negotiator because the attorney was acting in a business capacity rather than executing a traditional function of an attorney).

[88] *Arcuri v. Trump Taj Mahal Assocs.*, 154 F.R.D. 97, 102 (D.N.J. 1994) (quoting *Barr Marin Prods. Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979)).

[89] *See TransWeb, LLC v. 3M Innovative Props. Co.*, No. 10-4413, 2012 WL 2878076, at *17 (D.N.J. Apr. 12, 2012), *R. & R. adopted as modified*, No. 10-4413, 2012 WL 2878075 (D.N.J. July 13, 2012).

[90] *Id.* at *11.

provide information about Mr. Lasko, Mr. Esformes, and contents of the Marathon Report. However, some portions of the outlines contain legal advice and are privileged attorney-client communications; and will be further discussed below.

Regarding work product, Carrier's privilege log documents bates-stamped 00015, 00016, and 00017 each satisfy the work product doctrine. Similarly, Drinker's privilege log documents bates-stamped 1044-1053, 1175-1180, and 1181-1185 are protected by the work product doctrine. These documents were prepared in anticipation of litigation, after the JNL Plaintiffs threatened liability if the joint venture did not progress. HUMC's privilege log documents bates-stamped 131-132 and 133-134 allege protection under the work product doctrine, yet neither of these documents were prepared in anticipation of litigation. Instead, the documents/communications concern the joint venture, specifically the appraisal of land and an agreement, presumably related to the joint venture.

This Court endeavored the daunting task of evaluating each of the privilege log documents, but now approaches the parties' greatest contention—the Statements. Drinker Defendants assert the attorney-client privilege and common interest doctrine apply to the Statements because Carrier retained Drinker as counsel in connection with the proposed joint venture, Carrier requested Drinker to share with HUMC the legal risks presented to the proposed joint venture by the information in the Marathon Report, and Mr. Pozos's communications were made in confidence.[91] Further, Drinker Defendants argue that the privilege was not undermined when Carrier directed Mr. Pozos to share his advice with HUMC because Carrier and HUMC share a common interest.[92]

_____

[91] (D.E. 44, Drinker Defs' Br., at 14–15).

[92] (*Id*. at 15).

The context in which the Statements were made is crucial.[93] Against the backdrop of *in-camera* review, there is no question that communications intertwined legal and business advice. Arguably, these Statements, as is, do not provide any legal advice. Instead, they concern information about Mr. Lasko, Mr. Esformes, and their relation. Yet, it is unclear exactly what may have prompted these Statements. It is possible that the Statements were made in response to a review of the Marathon Report, a due diligence report; but it is also plausible that they were made in response to concerns about legal implications of doing business with the JNL Plaintiffs. Because the Statements were spoken, not written, the Court's review is frustrated.

Neither party provides compelling arguments as to why the attorney-client privilege should or should not apply. Drinker Defendants assert that Carrier retained Drinker to provide legal advice with the proposed joint venture, but *in-camera* review only partially supports this assertion. Although "confidential communications relaying factual information in furtherance of an attorney's representation are privileged" and "underlying facts themselves are *never* privileged,"[94] at this juncture, it is unclear whether the communications were intended to be confidential. The Court's review of Mr. Pozos's outlines in preparation of the February 14 call indicate that he provided mostly business advice, but also planned to provide some legal advice. If Mr. Pozos made the Statements in the context of legal advice, then they are privileged. Assuming *arguendo* that the Statements are privileged, this Court reviews them under the common interest doctrine.

---

[93] The Court makes no finding whether the Statements were in fact made, but only addresses the parties' arguments at this point in discovery.

[94] *Margulis v. Hertz Corp.,* No. 14-1209, 2017 WL 772336, at *5 (D.N.J. Feb. 28, 2017).

### B. Common Interest

The Court next applies the common interest doctrine to all of the communications that the Court deemed protected, in full or in part with redactions, by the attorney-client privilege and/or work product doctrine and that Drinker Defendants also assert waiver protection by the common interest doctrine due to being shared with third parties.[95] Drinker Defendants apply *O'Boyle*'s three-part test for the common interest doctrine, and insist that each part is satisfied to overcome the waiver of attorney-client privilege and work product doctrine. This Court reviews the common interest doctrine as applied to the privilege logs and the Statements.

#### 1. Actual or anticipated litigation

*O'Boyle* requires that the disclosure of privileged information be "made due to actual or anticipated litigation,"[96] and although Drinker Defendants acknowledge this factor, they argue that the common interest doctrine does not have such a requirement when applied to the attorney-client privilege.[97] Drinker Defendants rely on numerous cases outside New Jersey law in support of their position; however, other "courts vary in their analyses of the common interest rule" and "numerous differences among jurisdictions reflect the lack of uniformity concerning the scope of the common interest doctrine."[98]

*O'Boyle* "expressly adopt[ed] the common interest rule as articulated in *LaPorta*," and explained "[t]he common interest exception to waiver of confidential attorney-client communications or work product due to disclosure to third parties applies to communications

---

[95] *See supra* Section IV.A.

[96] *O'Boyle v. Borough of Longport*, 218 N.J. 168, 199 (2014).

[97] (D.E. 44, Drinker Defs.' Br., at 18).

[98] *O'Boyle*, 218 N.J. at 194–95.

between attorneys for different parties if the disclosure is *made due to actual or anticipated litigation* for the purpose of furthering a common interest."[99] It goes on to clarify that "disclosure may occur prior to the commencement of litigation."[100] Some counsel in *O'Boyle* urged that New Jersey's common interest doctrine "either strayed from its roots in the attorney-client privilege or [was] too narrowly restricted to disclosures made during litigation or in anticipation of litigation. Others contend[ed] the common interest rule articulated in *LaPorta* [was] too broad."[101] With these critiques in mind, the *O'Boyle* Court expressly declined to modify the *LaPorta* rule.[102] The common interest doctrine "offers all parties to the exchange the real possibility for better representation by making more information available to craft a position and *inform decision-making in anticipation of or in the course of litigation*."[103]

O'Boyle repeatedly confirms that for the common interest doctrine to apply, disclosure must be made due to actual or anticipated litigation. Drinker Defendants would like for the New Jersey Supreme Court to have followed Professor Schaffzin's suggestion that "because the common interest rule derives from the attorney-client privilege, it is of no matter whether the disclosure occurs in anticipation of litigation or in the course of litigation,"[104] but the New Jersey Supreme Court considered and rejected this position by adopting *LaPorta*. *O'Boyle* reviewed and

---

[99] *Id*. at 198–99 (emphasis added).

[100] *Id*. at 199.

[101] *Id*. at 197.

[102] *Id*.

[103] *Id*. (emphasis added).

[104] *O'Boyle*, 218 N.J. at 195–96 (citing Katharine Traylor Schaffzin, *An Uncertain Privilege: Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It*, 15 B.U. Pub. Int. L.J. 49, 76 (2005)).

considered the bounds of *the Restatement (Third) of the Law Governing Lawyers* § 76(1) (2000), yet did not endorse its strict application in New Jersey.[105]

New Jersey is not alone in its decision to require disclosure to be made due to actual or anticipated litigation. Although this Court is bound to New Jersey's application of the common interest doctrine in this instance, it reviews for guidance other courts' common interest doctrines containing variations of the litigation requirement. Such courts include, but are not limited to, Hawaii, Maine, New Hampshire, New York, and Vermont.[106] In *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, New York's highest court provided some insight into its reasoning for maintaining the two-decade old requirement that the common interest doctrine exception applies only when communications relate to litigation.[107] The court explained,

> we do not perceive a need to extend the common interest doctrine to communications made in the absence of pending or anticipated litigation, and any benefits that may attend such an expansion of the doctrine are outweighed by the substantial loss of relevant evidence, as well as the potential for abuse. The difficulty of defining "common legal interests" outside the context of litigation could result in the loss of evidence of a wide range of communications between parties who assert common legal interests but who really have only nonlegal or exclusively business interests to protect. Even advocates of a more expansive approach admit that "in a non-litigation setting the danger is greater that the underlying communication will be for a commercial purpose rather than for securing legal advice."[108]

---

[105] *Id*. at 187–88, 192–94.

[106] *See Boston Auction Co. v. Western Farm Credit Bank*, 925 F. Supp. 1478, 1482–83 (D. Haw. 1996); Me. R. Evid. 502(b)(3); N.H. R. Evid. 502(b)(3); *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30 (N.Y. 2016); Vt. R. Evid. 502(b)(3).

[107] *Ambac Assur. Corp.*, 57 N.E.3d at 32.

[108] *Id*. at 38–39 (citing James M. Fischer, *The Attorney-Client Privilege Meets the Common Interest Arrangement: Protecting Confidences While Exchanging Information for Mutual Gain*, 16 Rev. Litig. 631, 642 (1997)).

The potential abuse of the common interest doctrine concerned New York's highest court. In a footnote, the New York Court of Appeals acknowledged that "[o]ther jurisdictions have embraced the same [litigation] limitation through judicial decision," and specifically cited *O'Boyle* for New Jersey.[109]

This Court is aware that the common interest doctrine "should be applied in a manner that is consistent with the underlying privilege, here the attorney-client privilege,"[110] but *O'Boyle* explicitly placed additional requirements upon the common interest doctrine. Much of the requirements for the common interest doctrine are up for debate across jurisdictions, and although other courts reject a litigation requirement,[111] New Jersey does not and this Court must follow New Jersey law. This Court declines to adopt Drinker Defendants' position that anticipated litigation is not a necessary requirement for the common interest doctrine to protect waived attorney-client privileged communications.

Having settled the necessity of *O'Boyle*'s first requirement for the attorney-client privilege,[112] this Court must determine whether Drinker Defendants satisfy it. Drinker Defendants claim that they anticipated litigation, at the latest, on or about January 23, 2018, the day after HUMC shared the Marathon Report with Carrier. Drinker Defendants assert that Mr. Pozos reviewed the Marathon Report, and advised HUMC and Carrier "for the express purpose of explaining the potential litigation risks to the contemplated joint venture in light of Mr. Lasko's

---

[109] *Id.* at 37 n.3.

[110] *Gallo v. PHH Mortg. Corp.*, No. 12-1117, 2015 WL 12851917, at *4 (D.N.J. June 4, 2015).

[111] *See, e.g.*, *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 870 N.E.2d 1105, 1110–12 (Mass. 2007); Del. R. Evid. 502(b).

[112] The parties do not dispute whether the common interest doctrine requires anticipated litigation when applied to the work product doctrine.

involvement with Mr. Esformes and his businesses."[113] The JNL Plaintiffs dispute the date of anticipated litigation and claim that litigation could not have been anticipated until February 20, 2018, when the JNL Plaintiffs' counsel advised Drinker Defendants, HUMC, and Carrier that they would be liable for damages if they did not consummate the joint venture.

The parties dispute whether Drinker Defendants, HUMC, and Carrier had to anticipate litigation with the JNL Plaintiffs specifically, or whether anticipating litigation with the federal government sufficed. Drinker Defendants assert that the Marathon Report provided insight into a pending criminal prosecution in Florida and Carrier turned to Drinker for advice. In the recent joint letter, Drinker Defendants describe evidence presented at Mr. Esformes's recent criminal trial to show that the government actively investigated Mr. Esformes's businesses, and to provide a basis for their argument that Carrier and HUMC "too may have been subject to investigation by (and potential litigation with) the Government."[114]

Plaintiffs argue this position is "far-fetched" and that Drinker Defendants failed to articulate how they anticipated becoming embroiled in criminal prosecution with the federal government. The JNL Plaintiffs explain that before the Marathon Report, Drinker Defendants, HUMC, and Carrier knew of both Mr. Lasko's relationship with Mr. Esformes and the prosecution involving Mr. Esformes. In fact, the JNL Plaintiffs assert that based on HUMC and Carrier's knowledge of Mr. Lasko's relation with Mr. Esformes, they requested that a provision be inserted into the lease to permit them to acquire ownership of the property in the event that Mr. Lasko was prohibited from participating in federal programs.[115] Further, the JNL Plaintiffs assert that from

---

[113] (D.E. 44, Drinker Defs.' Br., at 17).

[114] (D.E. 78, Joint Letter, at 5).

[115] (D.E. 47, Pls.' Opp'n, at 9; D.E. 1, Compl., at ¶¶ 40–41).

the Marathon Report, Drinker Defendants, HUMC, and Carrier could not possibly have anticipated litigation with the JNL Plaintiffs.

*O'Boyle* is unclear as to what sort of "anticipation of litigation" is required, and no other court has addressed this issue. Drinker Defendants do not provide any case law in support of their position that they only needed to generally anticipate litigation with the federal government, not particularly with the JNL Plaintiffs. And this Court is unfamiliar with any case interpreting New Jersey law that may.

Interestingly, some of the privilege log entries assist this Court in applying the anticipated litigation requirement. Drinker Defendants do not assert work product for DBR 1-9 and 1034-1043, Mr. Pozos's outlines in preparation of the February 14 telephone conference, yet assert work product for DBR 1044-1053 and 1181-1185, Mr. Pozos's outline for a February 23 telephone conference regarding the February 20 letters from the JNL Plaintiffs' counsel. This distinction is particularly important because failure to allege work product as to the first two outlines suggest that the outlines were not made in anticipated litigation and Drinker Defendants did not anticipate any litigation prior to February 14, as they claim. Although it is unclear whether the anticipation for litigation requirements under the work product doctrine and common interest doctrine are similar—or even the same, yet this Court has no basis to find that they are—the work product doctrine's requirement is not overly stringent. Rule 26(b)(3), which controls the work product doctrine, requires only "that the material be prepared in anticipation of *some* litigation, not necessarily in anticipation of the particular litigation."[116] Accordingly, if Drinker Defendants, HUMC, and Carrier anticipated litigation at the latest on January 23, it follows that Drinker

---

[116] *In re Ford Motor, Co.,* 110 F.3d 954, 967 (3d Cir. 1997), *abrogated on other grounds by, Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).

Defendants would have supposed the post-January 23 outlines constituted privileged work product. Yet, Drinker Defendants failed to assert this privilege. Additionally, after receipt of the Marathon Report, HUMC sent a revised document in relation to the joint venture to Mr. Lasko.[117] This Court is hard-pressed to find that Drinker Defendants, HUMC, and Carrier anticipated litigation by January 23.

In following with the limited cases on this matter, the Court finds that the JNL Plaintiffs' date of anticipated litigation—February 20, 2018—is reasonable and proper. At that time, the JNL Plaintiffs' counsel advised Drinker Defendants, HUMC, and Carrier that they would be held liable for damages if they did not consummate the joint venture, resulting in an anticipation of litigation. Prior to that date, HUMC and Carrier could not have anticipated litigation and were instead conducting "due diligence"[118] before proceeding with the joint venture. Finding any differently would endorse an expansive approach that *O'Boyle* declined to adopt. Drinker Defendants fail to cite any authority to support their position that a "risk of litigation or government investigation"[119] suffices for anticipated litigation. Accordingly, Drinker Defendants, HUMC, and Carrier waived the attorney-client privilege and work product doctrine as to the communications and disclosures between them, including the Statements, prior to February 20.

The privilege log entries that satisfied the attorney-client privilege and/or work product doctrine, asserted common interest doctrine and occurred after February 20 include: Drinker Defendants privilege log documents bates-stamped 1044-1053; 1175-1180 and 1181-1185;

---

[117] (D.E. 78, Joint Letter, Ex. E).

[118] (D.E. 44-1, Sparta's Cert., at ¶ 11; D.E. 44-2, Parker's Cert., at ¶ 5; D.E. 44-3, Kendall's Cert., at ¶ 5; D.E. 44-4, Pozos's Cert., at ¶ 6).

[119] (D.E. 78, Joint Letter, at 5).

Carrier's privilege log documents bates-stamped PRIV 00016; and 00017; and HUMC's privilege log document bates-stamped 156-162. Portions of Drinker's privilege log documents bates-stamped 1-9 and 1034-1043 are protected by attorney-client privilege, yet occurred prior to February 20. Although Drinker Defendants, HUMC, and Carrier assert the common interest doctrine to prevent waiver, handwritten notations on Drinker's privilege log documents bates-stamped 1041 and 1042 suggest that the contents on those pages were not shared on the February 14 conference call. Without being shared with third parties, the common interest doctrine is inapplicable. Accordingly, the Court need not further evaluate these documents under the common interest requirement, and Drinker's privilege log documents bates-stamped 1-9 and 1034-1043 shall be produced, with redactions as to the last three sentences of 8 and 1041 and the entirety of 9 and 1042. Any other documents before February 20 that were protected by the attorney-client privilege or work product doctrine, and which asserted the common interest doctrine to prevent waiver, are not protected, because they do not satisfy the first requirement. As such, Drinker Defendants, HUMC, and Carrier waived protection. [120]

### 2. *Purpose of furthering a common interest*

With the first requirement of *O'Boyle* satisfied as to only some of the privilege log entries, the Court next considers whether the disclosures after February 20 occurred "for the purpose of furthering a common interest." The law is clear "that the shared interest need not be strictly legal but also may be commercial; and that the parties' shared interests need not be identical—a

---

[120] *See* N.J.S.A. 2A:84A–29 ("A person waives his right or privilege to refuse to disclose or to prevent another from disclosing a specified matter if he or any other person while the holder thereof has . . . without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.").

'common purpose' will suffice."[121] Although HUMC and Carrier signed the Common Interest Agreement, albeit in March 2018 after much of the at-issue communications, its existence is not dipositive.

Drinker Defendants maintain that the common interest amongst Carrier and HUMC began when HUMC invited Carrier to the joint venture in June 2017. As outlined in the LOI signed in July 2017, the parties contemplated the creation of a "Management Entity"—to be owned by HUMC and Carrier—and a "Real Estate Entity"—a separate entity owned by an entity to be created by JNL. HUMC and Carrier shared documents and communications, and worked together as contemplated by the LOI. HUMC and Carrier maintained a common purpose in the joint venture. And once the JNL Plaintiffs' counsel informed Drinker Defendants, HUMC, and Carrier of potential liability if the parties did not consummate the joint venture, HUMC and Carrier shared a common purpose in avoiding liability. As such, the communications and disclosures made after February 20 were made in furthering this common interest, and satisfy *O'Boyle*'s second prong.

### 3. *Made in a manner to preserve the confidentiality of the disclosed material*

The Court next considers whether the documents and communications after February 20 were "made in a manner not inconsistent with maintaining the privilege and confidentiality against adverse parties."[122] This Court's *in-camera* review demonstrates that the remaining document entries satisfy this requirement. The Court notes that three of the entries contain notes in response to the February 20 letter and contain language regarding confidentiality;[123] and three of the entries

---

[121] *Margulis v. Hertz Corp.*, No. 14-1209, 2017 WL 772336, at *9 (D.N.J. Feb. 28, 2017) (citing *O'Boyle v. Borough of Longport*, 218 N.J. 168, 199 (2014)).

[122] *Id.* at *10 (citing *O'Boyle*, 218 N.J. at 199).

[123] *See* DBR 1044-1053; DBR 1181-1185; PRIV 00016.

contain the Common Interest Agreement, which Drinker Defendants provided for *in-camera* review.[124] The Court finds that all three factors of the common interest doctrine are satisfied as to these documents.

Drinker Defendants, HUMC, and Carrier satisfy *O'Boyle*'s three-part test as to six documents, and therefore, did not waive the attorney-client privilege nor the work product doctrine as to these documents. As such, the following documents contained in the respective privilege logs remain privileged. Drinker Defendants privilege log documents bates-stamped 1044-1053, 1175-1180 and 1181-1185; Carrier's privilege log documents bates-stamped PRIV 00016, and 00017; and HUMC's privilege log document bates-stamped 156-162.

I emphasize that in order for the common interest doctrine to protect disclosures, an underlying privilege—attorney-client privilege or work product doctrine—must apply. This is particularly important because although *in-camera* review determined that many documents were unprotected by the attorney-client privilege or work product doctrine, for a vast majority of those documents that also asserted the common interest doctrine, they would not have been protected under the common interest doctrine even if deemed privileged because they occurred before February 20.

### C. Remaining Documents

Drinker Defendants produced an addendum to their privilege log identifying the public documents withheld due to Mr. Pozos's handwritten notes and providing the corresponding docket entries from Mr. Esformes's criminal case.[125] The JNL Plaintiffs have not objected to the

---

[124] *See* DBR 1175-1180; PRIV 00017; HUMC 156-162.

[125] (D.E. 53, Drinker Defs.' Letter, Ex. A).

sufficiency of this production. Accordingly, this Court's review of these privilege log entries in accordance with their previously stated privileges is moot.[126]

## V.    CONCLUSION

For the foregoing reasons, this Court **GRANTS IN PART** and **DENIES IN PART** Drinker Defendants' informal motion for an order of protection and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' informal motions to compel Carrier and HUMC.

An appropriate Order follows.

### ORDER

**IT IS** on this Friday, May 31, 2019,

1. **ORDERED**, that Drinker Defendants shall produce documents bates-stamped 1-9—with the exception of the last three sentences on 8 and the entirety of 9, which shall be redacted prior to production; 1031-1033—with the exception of the last two sentences of paragraph 5, which shall be redacted prior to production; 1034-1043—with the exception of the last three sentences on 1041 and the entirety of 1042, which shall be redacted prior to production; 1054; 1163-1166; 1167-1168; 1169-1171; and 1172-1174; and it is further

2. **ORDERED,** that Carrier shall produce documents bates-stamped 00001; 00002; 00003; 00004—with the exception of the last two sentences of paragraph 5, which shall be redacted prior to production; 00005; 00006; 00007; 00008; 00009; 00010—with the exception of the highlighted portion, which shall be redacted prior to production; 00011; 00012; 00013; and 00014; and it is further

---

[126] Drinker Defendants' privilege log documents bates-stamped 10-13; 14-39; 40-88; 89-146; 147-164; 165-231; 232-264; 265-313; 314-539; 540-770; 771-1030; 1081-1129; and 1130-1162.

3. **ORDERED,** that HUMC shall produce documents bates-stamped 1; 33-42—with the exception of the top email on 33, which shall be redacted prior to production; 43-44—with the exception of the bottom email on 43, which shall be redacted prior to production; 46-55; 68-69; 70-72—with the exception of 72 in its entirety, which shall be redacted prior to production; 73-74; 75; 81-92; 93-94; 117-118; 131-132; and 133-134.



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

5/31/2019 1:24:13 PM

Original: Clerk of the Court
Hon. Esther Salas, U.S.D.J.
cc: All parties
    File